Argued and submitted February 4, affirmed July 21, 1999

In the Matter of the Marriage of

Jerald E. ALBRICH,
*Respondent,*

*and*

Karen R. ALBRICH,
*Appellant.*

(DR8801223; CA A102229)

987 P2d 542

Jack L. Kennedy argued the cause for appellant. With him on the brief were Susan E. Watts and Kennedy, Watts, Arellano & Ricks LLP.

Helen T. Dziuba argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Wife appeals the judgment reducing her spousal support from $5,000 to $2,000 per month. On *de novo* review, ORS 19.415(3), we affirm.

Because this case concerns only a modification of spousal support, it centers on whether there has been "a substantial change in economic circumstances of a party * * * sufficient for the court to reconsider its order of support." Or Laws 1997, ch 746, § 116(2)(a), *compiled as note after* ORS 107.135 (1997).[1] Accordingly, in reciting the facts, we focus principally on the circumstances that inform that inquiry. In 1989, when the parties ended their 23-year marriage, husband, 48 years old, was employed as a radiation oncologist and earned $19,130 per month; wife, 47 years old, did not work outside the home. They have three children, who were 23, 17 and 15 at the time of the dissolution trial. In the dissolution judgment, the trial court awarded wife spousal support in the amount of $6,000 per month for five years and $5,000 per month thereafter.[2] The court also divided husband's pension and profit sharing plan equally between the parties, awarding each party $308,000.

Presently, husband no longer works as an oncologist because he suffers from a neurological disorder that causes uncontrollable neck spasms and cognitive problems that prevent him from effectively working with patients. He has retired from the practice of medicine and receives $7,500 in monthly income from a disability insurance benefit. Based on his retirement from his medical practice and the attendant decrease in monthly income, husband sought a modification of spousal support, contending that that reduction in income

---

[1] The provisions of section 116 that are relevant here, sections (2)(a) and (3)(a), are identical to the same provisions of ORS 107.135. However, in 1997, the legislature declared that ORS 107.135 was inoperative until December 31, 2001, and that Oregon Laws 1997, chapter 746, section 116, would operate in lieu thereof. *See* Or Laws 1997, ch 746, § 116, *compiled as note after* ORS 107.135.

[2] The dissolution judgment also awarded wife custody of the two minor children, child support, certain insurance support and, essentially, an equal division of the marital property.

constituted a "substantial change in economic circumstances" sufficient to justify a reduction in his support obligation. The trial court agreed, entering a judgment of modification reducing wife's permanent support award to $2,000 per month. The trial court reduced the amount of support based on a ratio equal to the percentage decrease in husband's monthly income.

■ On appeal, and as she did below, wife does not dispute the legitimacy of husband's disability; rather, wife urges that, in determining whether husband's economic circumstance had changed substantially, the court erroneously failed to consider husband's retirement account, and other investment accounts jointly held by husband and his new wife, as potential income opportunities when it concluded that husband's economic circumstance had changed.[3] Wife urges that the plain language of Oregon Laws 1997, chapter 746, section 116(3), requires that the court do so. That law provides:

"(3) In considering * * * whether a change in circumstances exists sufficient for the court to reconsider spousal or child support provisions of a decree, the following provisions apply:

"(a) The court shall consider income opportunities and benefits of the respective parties from all sources, including but not limited to:

"(A) The reasonable opportunity of each party * * * to acquire future income and assets.

"(B) Retirement benefits available to the obligor and to the obligee[.]"

---

[3] The dissolution judgment evenly divided husband's pension and profit sharing plan, which resulted in each party receiving a retirement account worth $308,267. At the time of the modification, husband had retirement and investment accounts totaling $2,597,449. Wife's expert testified at trial that, if husband invested all of those investment accounts for income rather than for growth, then he could earn approximately $21,000 per month without invading the principal. In addition, husband's current wife has securities and cash accounts estimated at $619,783. At the time of the modification, wife's retirement account had grown to $800,000.

Husband argues that it would be unfair to adopt wife's position for two reasons. First, as to husband's retirement account that was part of the original property division, husband urges that, if wife's position is adopted, then it would result in an unlawful modification of that property division. That is so, husband contends, because the source of a portion of those investment accounts comes from husband's half of his pension and profit sharing plan, which was divided in the dissolution judgment. Thus, husband argues, if spousal support is maintained at its current level based on his unrealized gains from those accounts, then he would, in effect, be forced to liquidate his assets and that forced liquidation, he contends, would constitute an unlawful modification of the original property distribution.[4] *See Prime v. Prime*, 172 Or 34, 49-50, 139 P2d 550 (1943) (property divisions are not subject to subsequent modifications, irrespective of any future changes in the financial condition of either party). As to the accounts husband holds jointly with his new wife, husband argues that such a forced liquidation would be unfair to husband's new wife because it would require, in effect, that she use her income to support husband's former wife.

As explained below, we disagree with husband's analysis as it relates to what the court may consider because the controlling statutory provisions expressly render husband's retirement benefits, as well as his income from the jointly held accounts, lawful considerations. However, as we will explain, we agree that, in this instance, those assets are not a sufficient basis to ignore the substantial decrease in husband's monthly income due to his impairment.

■ In this support modification proceeding, the trial court's authority is governed by Oregon Laws 1997, chapter 746, section 116. Generally, that law limits the court's power to a review of the amount of the support award and dictates that a modification is proper only where there has been substantial change either in the obligor's ability to pay or the obligee's need, "sufficient for the court to reconsider its order of support." Or Laws 1997, ch 746, § 116(2)(a).

---

[1] Modifications to property distributions are permitted only if the property award was based on the enhanced earning capacity statute, ORS 170.135(1)(e).

■    Because section 116 governs the modification inquiry here, we construe that law to determine what factors the court may consider in analyzing the "change of circumstances" question. In construing a statute, we first examine its text and context because a statute's wording "is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). As relevant here, context includes other provisions of the same statute and other related statutes. *Id*. at 610-11. If, after examining the text and context of a statute, the legislature's intent is clear, then our analysis ends. *Id*.

■    Turning to the relevant text, we begin with the general provision governing the court's review authority, which is found in subsection (3)(a):

> "The court shall consider income opportunities and benefits of the respective parties from all sources[.]"

Two important textual clues are found in that provision: the word "opportunities" and the phrase "all sources." With respect to the former, "opportunities" refers to a condition that has not yet come to pass but could occur under the prevailing circumstances. *Webster's Third New Int'l Dictionary*, 1385 (unabridged ed 1993). As to the latter, "all sources" plainly implies no limits. It therefore follows that subsection (3)(a), when read in a commonsense manner, compels an expansive review of a party's ability to pay and of a party's need. Significantly, subsection (3)(a) does not restrict the court's consideration to income that either party is presently receiving and makes no distinction between income opportunities derived from previously divided marital property and those opportunities derived elsewhere. Put simply, under section 116(3)(a), the breadth of the court's *consideration* of the parties' income is without limits.

■    Turning now to one of the specifically listed considerations, subsection (3)(a)(B) directs the court to consider "[r]etirement benefits available to the obligor and to the obligee[.]" Again, and in a manner consistent with the general provision described above, there is nothing in the text demarcating a distinction between retirement benefits previously subject to the marital property division and benefits accrued after the dissolution. When section (3)(a) and (3)(a)(B) are

read together, only one conclusion reasonably follows: Section 116(3) not only permits the court to consider retirement benefits and other income opportunities, whatever their source, but compels the court to do so. *See* Or Laws 1997, ch 746, § 116(3)(a) ("[t]he court *shall* consider * * *") (emphasis added).

■ A related statute supports that conclusion. In describing what may be considered in the initial property division, ORS 107.105(1)(f) expressly declares that "[a] retirement plan or pension or an interest therein shall be considered as property." That phrase shows the legislature's awareness that a retirement asset may be part of the property division, which, in turn, leads reasonably to the conclusion that, if the legislature intended to exclude potential income from such assets from the modification inquiry, then it would have expressly done so. Accordingly, we hold that section 116 requires the court to consider each party's income opportunities from all sources, irrespective of whether the opportunity derives from property awarded in the marital property division. *Accord DeNotta and DeNotta*, 147 Or App 149, 154, 935 P2d 475 (1997). For purposes of clarity, however, we further note that, although section 116(3) mandates an expansive consideration, it does not compel a particular result.

■ We turn now to the trial court's analysis to determine if it properly considered the factors as mandated by section 116(3). At trial, in determining whether to reconsider the spousal support, the court reasoned as follows:

> "So I guess the uniqueness of this case is should we penalize the petitioner for this course of action, for frugality, saving, and so forth and so on? And it cries out: Is it fair? Is it fair?
>
> "* * * * *
>
> "That's the uniqueness of this case. The money came after the curtain came down, after the guillotine came down and the marriage was sliced. It came after, as a practical matter. That's the uniqueness of this case[.]"

Wife argues that the court's analysis must be construed as violating the directives of section 116(3) because the court failed to consider the current value of husband's retirement

and jointly held accounts as potential income opportunities to fund his spousal support obligation. We agree with wife that the court failed properly to "consider" husband's retirement and investment accounts pursuant to section 116(3)(a). Nevertheless, we affirm the judgment modifying husband's spousal support obligation for the reasons that follow.

On *de novo* review, we find that husband's economic circumstances have changed substantially in that his medical condition has caused his unanticipated retirement from medical practice. Although we find that husband's retirement and investment accounts are a potential source of income that must be "considered," we nevertheless conclude that *consideration* of those accounts does not, as argued by wife, mandate that husband's support obligation remain at the level set in the original dissolution judgment.

The overriding consideration in determining the appropriate amount of spousal support is what is "just and equitable," ORS 107.105(1)(d), under the totality of the circumstances. Here, we find that it was not anticipated at the time of the dissolution that husband would have no income from employment or that his retirement and investment accounts would be a necessary source of income to fund his spousal support obligation. In that same vein, we find it significant that husband's retirement and investment accounts were originally the subject of the property division in which wife also received a substantial share. *See Tiley v. Tiley*, 147 Or App 262, 266, 936 P2d 367, *rev den* 325 Or 491 (1997) (retirement benefits that accrue during the marriage are assets that are subject to division as marital property). In fact, wife's retirement account, awarded to her in the dissolution proceeding, also has increased significantly since the dissolution. The substantial income potential from wife's assets also militates against relying on the increase in husband's accounts as a source to fund spousal support at the original level. Under these circumstances, even "considering" the potential income from husband's retirement and investment accounts, we conclude that it is "just and equitable" to reduce husband's spousal support obligation based on his loss of employment income. We agree with the trial court that a reduction to $2,000 per month is appropriate.

Affirmed.