Argued and submitted December 20, 2001, spousal support reduced; supplemental judgment for attorney fees reversed March 13, 2002

In the Matter of the Marriage of

Christine HALSEY,
*Respondent,*

*and*

Ronald L. HALSEY,
*Appellant.*

94-DO-0083; A112881

41 P3d 1119

Steven K. Chappell argued the cause and filed the brief for appellant.

Stephen D. Dixon argued the cause for respondent. With him on the brief was Merrill O'Sullivan, LLP.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

### BREWER, J.

Husband appeals a judgment denying his motion to terminate or modify his spousal support obligation.[1] Husband contends that the trial court should have terminated or reduced the support obligation because he has retired and is depleting the retirement benefits awarded to him in the original division of marital property and because, although wife continues to receive spousal support payments, she has not been required to draw on her share of those retirement benefits. Husband also appeals the trial court's award of attorney fees to wife, asserting that wife did not adequately plead her request for attorney fees, having first made the request in her trial memorandum. On *de novo* review, ORS 19.125(3), we reduce the spousal support obligation to $800 per month. In addition, because wife failed properly to allege her entitlement to attorney fees in an authorized pleading, we reverse the supplemental judgment for attorney fees.

The parties were married for 42 years. At the time of the 1995 dissolution, husband was 60 and wife was 59. Wife was a homemaker throughout the marriage, staying at home to raise the parties' two children, who are now adults. At the time of dissolution, husband was in good health, working full time as a maintenance supervisor for a tire center. Husband's annual salary at that time (including an annual bonus and dividends) was $43,700. Wife was not employed outside the home and suffered from various health problems.

The parties' marital settlement agreement (MSA) was incorporated into the judgment dissolving their marriage. Wife was awarded indefinite spousal support of $1,200 per month on an annualized basis.[2] The parties' property was equally divided. Of most significance here, wife received the unencumbered marital residence, a 1986 automobile, and $45,830 of husband's vested account balance in husband's

---

[1] Husband's motion sought termination of his support obligation. However, both parties have treated husband's motion as seeking, alternatively, to reduce the amount of his obligation.

[2] The award actually was slightly more complicated. Wife received $1,000 in monthly support, plus $2,400 per year in lump sum support after husband received his annual bonus.

profit sharing retirement trust account. The primary asset awarded to husband was the remaining $114,030 of his retirement account. The difference in value between the parties' shares of the retirement account was attributable primarily to the value of the residence awarded to wife.

As pertinent to the award of spousal support, the MSA provided:

> "It is acknowledged by husband and wife that said spousal support obligation has been established based upon the parties' current financial circumstances, to-wit: Wife is not employed, has only limited job skills, hopes to obtain part time work to supplement her income, but has no immediate job prospects. Wife will be able to receive reduced social security benefits in approximately three years when she reaches age 62 and full social security benefits at age 65. Husband is currently employed and earns an annual salary of approximately $35,700.00, together with an annual bonus which averages approximately $8,000.00 per year. Husband is nearing retirement age, intends to retire at some time in the future, but has no present intention of immediately terminating his employment. It is uncertain as to when the parties' respective incomes will change and to what extent. It is hereby acknowledged by both husband and wife that the anticipated changes referred to above and the resultant effect upon the parties' respective incomes are too indefinite and uncertain to be calculated at this time and that said changes may be sufficient to constitute a substantial change of circumstances for the purpose of justifying a modification of the foregoing spousal support order at some time in the future."

The MSA did not expressly specify the purpose of the spousal support award; however, the award provided wife with approximately one-third of husband's gross income, without regard to wife's own limited earning capacity.

In 1997, wife sold the marital residence for $75,000. Wife now rents an apartment for $450 per month. She used approximately $20,000 from the proceeds of the residence sale to buy a new car and spent additional sums to pay bills, including repair expenses for her old car and medical expenses related to a surgery. Wife testified that she had not been able to make ends meet after the dissolution and, thus,

was required gradually to deplete the residence sale proceeds in order to pay her ordinary living expenses. Wife holds the remaining proceeds, approximately $30,000, in a certificate of deposit (CD), which yields monthly interest income of $141.[3] After the dissolution, wife obtained part-time employment as a teacher's aide, earning $5,000 per year. Wife terminated her employment in January 2000 due to her ongoing health problems, including progressive back pain that prevented her from standing or driving for extended periods. Wife has been unable to return to work and does not anticipate being able to do so.

Husband worked for approximately five years after the dissolution, acquiring a new residence and an adjoining lot in the process. Husband retired in December 1999 and filed his motion to terminate his support obligation in February 2000. The motion was heard in May 2000. At the time of the modification hearing, husband was 65 and in good health; wife was 64 and suffered from various health problems, including degenerative arthritis and a cracked pelvis. Husband lived with a woman who did not contribute to their household expenses. Husband was receiving income of $4,033 per month, derived from two sources: (1) social security benefits of $1,233 per month; and (2) retirement income of $2,800 per month. Husband's retirement income was based on a 30-year amortization of his account balance. The account had grown substantially after the dissolution, primarily due to unusually high earnings in 1999, the year of husband's retirement.[4] At the time of the hearing, wife's monthly income was approximately $1,814, consisting of (1) social security benefits of $473; (2) interest of $141; and (3) spousal support of $1,200. Wife had not yet begun to draw on her share of husband's retirement account balance. Although wife was entitled to draw her share of the retirement account as a lump sum at the time of the hearing, she could not begin receiving monthly benefits from the plan until she reached age 65, in January 2001. At that time, wife

---

[3] Those proceeds had been reinvested several times before the modification hearing and also had been pooled with a cash gift made to wife by her mother. At the time of the hearing, the CD constituted nearly all of wife's savings.

[4] At the time of the modification hearing, husband's account balance had grown to $346,453, and wife's balance had grown to $113,389.

would be entitled to receive approximately $832 to $995 per month, depending on the rate of annual return, over a 30-year payout period.

A certified public accountant testified as an expert witness on behalf of wife that, if the spousal support obligation remained at $1,200 per month, the parties' after-tax net incomes would be comparable: husband would have $31,089 per year ($2,591 per month), and wife would receive $28,250 per year ($2,354 per month). The expert assumed, in making his determination, that wife would receive $1,000 per month from her share of the retirement account. The expert made alternative after-tax net income calculations at reduced support levels. At a support level of $1,000 per month, husband would have $32,625 per year ($2,718 per month), and wife would net $26,552 per year ($2,212 per month). At $800 per month, the net after-tax income apportionment would be: husband, $34,161 per year ($2,846 per month); wife, $24,876 per year ($2,073 per month).

The trial court determined that husband had not demonstrated a material change of circumstances and, as a consequence, declined to terminate or reduce husband's support obligation.[5] In a supplemental judgment, the trial court awarded wife her attorney fees in the sum of $3,500. In doing so, the court overruled husband's objection that wife's request should be denied because she first raised it in her trial memorandum. Husband appeals from both judgments.

■ ORS 107.135 authorizes a court to modify an award of spousal support if the economic circumstances of a party have substantially changed.[6] Husband makes several arguments on appeal in support of his contention that the trial

---

[5] Because husband no longer received an annual bonus after his retirement, the trial court did modify the judgment to the extent of fully amortizing the support obligation on a monthly basis at $1,200.

[6] ORS 107.135 (1999) provides, in part:

"(2) In a proceeding under this section to reconsider the spousal or child support provisions of the decree, the following provisions apply:

"(a) A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse."

court erred in failing to reduce or terminate support, two of which we dispose of with limited discussion. First, husband asserts that the parties agreed in the MSA to dispense with the requirement that the spousal support obligation could be modified only if a change of circumstances had been demonstrated. That argument is incorrect. The parties acknowledged in their MSA that future changes in their incomes were too uncertain "to be calculated at this time and that *said changes may be sufficient to constitute a substantial change of circumstances* for the purpose of justifying a modification of the foregoing spousal support order at some time in the future." (Emphasis added.) Thus, rather than abrogating the change of circumstances requirement, the parties expressly bargained in contemplation of its application. Second, husband asserts that the change of circumstances rule should not be applied in what he describes as the "extraordinary circumstances of this case." We reject husband's argument for two reasons. First, because the parties did not agree to abrogate the change of circumstances rule, husband's argument is inconsistent with ORS 107.135(2) (1999), which codifies the rule.[7] Second, and in any event, husband does not explain how it would be inequitable to apply the statutory rule in this case. The MSA expressly contemplated a review of the parties' financial circumstances upon husband's retirement based on the change of circumstances rule. Although husband's retirement was expected, its effect on the parties' financial circumstances was unknown at the time of the dissolution judgment. In short, the law requires—and husband agreed to—application of the change of circumstances rule to any review of the spousal support award.

In 1999, the legislature substantially amended the law relating to awards of spousal support, providing for the first time for compensatory spousal support, ORS 107.105(1)(d)(B); those amendments applied, however, only to support petitions filed after October 23, 1999, and thus did not retroactively characterize or affect the spousal support award made in the 1995 dissolution judgment.

[7] Husband's reliance on *McDonnal and McDonnal*, 293 Or 772, 783, 652 P2d 1247 (1982), in which the Supreme Court described the change of circumstances rule as a construct of common law rather than a statutory requirement, is misplaced. *McDonnal* involved an MSA in which the court upheld the parties' agreement for an automatic review of the support award without regard to the change of circumstances rule. *Id.* at 776. As noted, the parties here made no such agreement. Furthermore, the only nonstatutory aspect of the rule is the requirement that the substantial change was *unanticipated* at the time the last relevant judgment was entered. *Eidlin and Eidlin*, 140 Or App 479, 483 n 3, 916 P2d 338 (1996).

■    The question, then, is whether husband demonstrated a substantial change in either party's financial circumstances that was sufficient to warrant modification of the support award. In that regard, husband makes two arguments that merit discussion. The first has to do with determining the proper frame of reference for ascertaining whether a substantial change has occurred. Husband asserts that the purpose of the initial support award was not "to equalize the parties' income." Husband correctly points out that the initial support award did not equally divide the parties' income; it provided wife with approximately one-third of their pretax monthly income or, if wife's limited employment earning capacity at the time of the initial award is considered, approximately 40 percent of their combined earning capacities.[8] Husband insists that the judgment of dissolution and the MSA do not provide any guidance as to the purposes of the initial award and, thus, the court's "task is to maintain the relative positions of the parties as established in the initial decree[.]" *Bates and Bates*, 303 Or 40, 47, 733 P2d 1363 (1987).

Although the MSA does not explicitly identify the purpose of the award, it focuses on the parties' respective incomes and earning capacities. Accordingly, determining "the relative positions" that must be maintained requires us to examine changes in the parties' incomes that have occurred since the initial award was made. Wife now has social security income of $473 per month, interest income of $141 per month, and, following her 65th birthday in January 2001, became eligible to draw retirement benefits from her share of husband's account in the approximate amount of $940 per month (the midpoint estimate proffered by wife's expert), for a total income capacity of $1,554 per month. That sum is approximately equal to the spousal support award, plus the $416 per month she earned after the dissolution as a part-time teacher's aide. Husband's gross monthly income is

---

[8] That percentage is derived as follows:

(1) total monthly family earning capacity = $48,700 per year divided by 12 = $4,058 per month;

(2) wife's percentage share of monthly earning capacity = sum of support award ($1,200) + wife's monthly earning capacity ($416) divided by total monthly family earning capacity ($4,058) = 40%.

now $4,033 (retirement income of $2,800 plus social security benefits of $1,233) compared to $3,642 at the time of the initial award. Thus, the parties' total current income capacity is $5,587, compared to $4,058 at the time of the initial award. That difference reflects a substantial change in both parties' economic circumstances.

If we were merely to consider whether wife's current income capacity—including her ability to withdraw lump sum retirement benefits—has fully replaced the amount of the spousal support award, we might conclude that it had and terminate or substantially reduce the award. *See Cowden and Cowden*, 172 Or App 343, 351, 18 P3d 479 (2001) (adopting modified spousal support award that maintained obligee's total income level at time of initial award). However, the matter is not so simple.

"The overriding consideration in determining the appropriate amount of spousal support is what is 'just and equitable,' ORS 107.105(1)(d), under the totality of the circumstances." *Albrich and Albrich*, 162 Or App 30, 37, 987 P2d 542 (1999). Wife credibly testified that she has been required to deplete the proceeds from the sale of the family residence in order to meet her ordinary expenses, including the medical expenses flowing from her chronic health problems. Husband's suggestion that wife has squandered her share of the marital assets, while he has more carefully managed his own share, is not supported by our review of the record. Husband overlooks that wife had no savings or borrowing capacity with which to replace her aging car without selling the residence. The post-dissolution years have been kinder to husband, who was able to work—free of health problems—for five more years, acquiring a new residence in the process. Furthermore, wife's health problems pose an ongoing threat to her economic security; thus, her remaining savings furnish her only hedge against that threat.

The original judgment dissolved a 42-year marriage in which wife performed the permanent role of homemaker spouse. She was 64 years old at the time of the modification hearing and not healthy enough to achieve gainful employment. Ascertaining the change in economic position of a

homemaker spouse in wife's circumstances is not accomplished by applying a formula that compares the parties' incomes before and after retirement but fails to consider other relevant factors, including their respective expenses. In fact, there is a much smaller actual gap between husband's current income and expenses—including his support obligation—than wife would suffer if support were terminated altogether. Wife's uniform support affidavit shows that she has monthly expenses of $2,488, excluding estimated income tax liability. If the spousal support award were terminated, wife's monthly shortfall would be substantial, even assuming that she withdrew her retirement funds and immediately began depleting them each month. On the other hand, husband's claimed monthly expenses—including his current support obligation but excluding estimated income tax liability—total $3,583, compared to monthly income of $4,033.

Husband argues that he would be unfairly penalized for choosing assets wisely if wife were to share in the windfall of the unanticipated growth in his retirement account balance. He also observes that he has begun dissipating his retirement account—an asset whose value was charged against his share of the property division in the dissolution—and that wife has not yet been required to do so. Husband reasons that it would be inequitable for his retirement funds to constitute both an asset awarded to him in the property division *and* a source of income for payment of his spousal support obligation. Husband's argument is flawed in at least two respects.

■      First, the change in value of the parties' retirement account is precisely the sort of uncertainty that made it impossible to forecast—at the time of the initial award—the parties' respective incomes upon husband's retirement. Not only is it fair to consider that change, in light of the terms of the MSA, it is necessary to do so.

■      Second, husband mistakes the role of the parties' retirement accounts in the analysis of their post-retirement financial circumstances. ORS 107.135(3)(a) requires a court to consider, in a proceeding to modify a spousal support award, "income opportunities and benefits of the respective parties from all sources[.]" Included among such benefits is

income realized from retirement accounts after the obligor or the obligee has retired, even though such accounts also were treated as property in the division of assets in the dissolution judgment. *Albrich*, 162 Or App at 35-36. The MSA itself makes no distinction among various sources of the parties' "respective incomes" in determining whether a change of circumstances has occurred upon husband's retirement. Unlike in *Albrich*, it is apparent that the parties expected that the social security and retirement incomes of both would be considered in determining whether and to what extent a change of circumstances had occurred. We conclude that it is just and equitable to consider both parties' retirement benefits in determining a just and equitable amount of spousal support.

■     To summarize, the parties' economic circumstances have changed substantially since the initial spousal support award was made. However, it would not be just and equitable under the totality of circumstances to terminate the award altogether. The question remains at what level support should continue. In that regard, we have considered the relative economic impact of various possible support levels. We conclude that a support award of $800 per month is just and equitable in the totality of circumstances. That support level roughly preserves—at least on an after-tax basis—the overall percentage division of income between the parties that was provided by the initial award,[9] and it also imposes a comparable burden as respects the shortfall between the parties' respective after-tax incomes and their expenses. Furthermore, it acknowledges the diverging trajectories of the parties' economic circumstances after the initial award was made, driven in large part by wife's health problems.

■■     We turn to husband's argument that the trial court erred in awarding attorney fees to wife. Husband is correct that wife failed to allege her entitlement to attorney fees in a pleading or motion as required by ORCP 68 C. Wife's request for attorney fees in her trial memorandum was untimely, and we are not free, under ORCP 12, to disregard the error as one not affecting the substantial rights of husband. *Mulier v.*

---

[9] At an $800 per month support level, wife will receive—on an after-tax basis—approximately 42 percent of the parties' combined after-tax income capacities: $2,073 divided by $4,919.

*Johnson*, 332 Or 344, 350, 29 P3d 1104 (2001). After husband objected to wife's attorney fee statement, wife filed, without seeking permission from the court, an amended response to husband's motion to terminate spousal support that alleged her entitlement to attorney fees. Wife's amended response likewise did not remedy the error. Because it was not authorized, *see* ORCP 23 A, it did not constitute a "pleading" under ORCP 68 C. *See* ORCP 13 B (providing that, other than enumerated pleadings, "[t]here shall be no other pleading unless the court orders otherwise").

Spousal support reduced to $800 per month, effective March 13, 2002; supplemental judgment for attorney fees reversed.