Argued and submitted October 4, remanded for modification of judgment reducing monthly spousal support to $250 December 19, 2007

## In the Matter of the Marriage of

### Evelyn F. GIBSON,
*Petitioner-Appellant,*

*and*

### Gary G. GIBSON,
*Respondent-Respondent.*

### Benton County Circuit Court
CV900825; A131040

174 P3d 1066

Chelsea D. Armstrong argued the cause for appellant. With her on the opening brief was the Law Office of Edward L. Daniels. With her on the reply brief was Edward L. Daniels.

Robert C. McCann, Jr., argued the cause for respondent. With him on the brief was Long, Delapoer, Healy, McCann & Noonan, P.C.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Wife appeals a judgment granting husband's motion to terminate his monthly spousal support obligation of $500. Wife contends that the trial court erred in determining that there had been a substantial change in circumstances and in terminating spousal support based on a calculation of husband's monthly income that did not include his monthly withdrawals from his retirement funds. On *de novo* review, ORS 19.125(3), we conclude that monthly spousal support should continue indefinitely in the amount of $250, and we therefore remand for modification of the judgment.

The parties' 34-year marriage ended in dissolution in 1991. At the time, wife was 53 years old and husband was 55. Wife had worked during the later years of the marriage but was recently unemployed at the time of dissolution. She estimated her earning capacity to be at most $1,100 per month. Husband's gross monthly income was $3,010. The disparity in the parties' earning capacities was thus approximately $2,000 per month.

The dissolution trial court determined that the case was appropriate for "permanent" spousal support:

"The Court is satisfied that this is an appropriate case for permanent spousal support. It has been a lengthy marriage. While the Petitioner has been employed outside the home on a regular basis during the latter part of the marriage, her current circumstances indicate that there will be a very substantial disparity in the parties' earning capacity."

The trial court determined that the length of the parties' marriage and the disparity in the parties' earning capacities justified a spousal support award of $700 for 24 months and $500 per month thereafter, "permanently."[1] Thus, in its indefinite award, the court divided the parties' earning capacities in a ratio of approximately 39 percent to wife, and approximately 61 percent to husband. In addition, the court made an equal division of the parties' assets, with each party

---

[1] In current parlance, such an award would be characterized as indefinite "maintenance" support. *See* ORS 107.105(1)(d)(C).

receiving assets valued at approximately $140,000. For her property award, wife received the family home (subject to a mortgage), her IRA in the amount of $7,000, and a savings account of $5,200. Husband's assets included his 401(k) retirement account, which at the time had a value of $94,000, and a motor home.

Wife found full-time employment shortly after the dissolution, at an income higher than anticipated. At the time of her retirement from full-time employment in 2003, she was earning $31,211 per year as an accounting technician at Oregon State University. Since her retirement from full-time employment at the age of 65, she has been receiving Social Security benefits of $1,014 per month, net of Medicare, and working part time at Oregon State University on contract for $1,220 per month. That income, together with a $649.52 monthly annuity from two pensions, and dividend and interest income, yields a monthly gross income for wife of $3,077.52, exclusive of spousal support. For health reasons and because of her age, wife, who was 67 years old at the time of the modification trial, intended to stop working in the near future. Consequently, wife's monthly gross income, exclusive of spousal support, was expected to decline to about $1,857.52.

Since the dissolution, wife's monthly expenses have declined, because she was able to pay off the house mortgage and car loan. The trial court found that wife's monthly expenses at the time of trial were $1,530. Wife claimed additional expenses of $700 per month, but the trial court found her testimony as to those expenses not credible.[2] At the time of trial, wife was living with a man who contributed minimally to household expenses.

Wife has lived frugally and has increased her savings since the dissolution. She has a 403(b) retirement account, a savings account, and an outstanding promissory note from her son, which together have a value of $140,048. At the time of the modification trial, she did not depend on

---

[2] We have no reason to disturb the trial court's credibility findings. *See Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000).

withdrawals from her 403(b) retirement account or savings account to meet her monthly expenses.

Husband's income from employment also increased after the dissolution. At the time of dissolution, husband's gross monthly income from employment was approximately $3,000. In the final years of his employment, his monthly income from employment had increased to $5,500, and he also was receiving Social Security benefits of approximately $1,500 per month. He retired from his employment in August 2005, at age 68.

Since his retirement, husband's primary source of income is his Social Security of $1,589 per month, net of Medicare. In contrast to wife, husband's expenses since the dissolution have increased. After the dissolution, husband purchased 40 acres of land on which he built a home, and he purchased a new truck. To meet his monthly expenses of $4,659.76 (including his spousal support obligation) husband withdraws $4,018 monthly from two combined retirement accounts, an Edward Jones account with a balance of $19,646 and a 401(k) account with a balance of $348,254.[3] The trial court concluded that the amount withdrawn from husband's retirement funds "is not determinative" for purposes of spousal support "since it is not income," and found that husband's monthly gross income, including Social Security net of Medicare, is $1,601.85. At the time of the modification trial, husband's two retirement accounts together had a value of approximately $365,000. Husband had remarried, and his wife was 50 years old and was not currently employed outside the home.

Both parties are in fair health. Husband has had bypass surgery and takes medications for high blood pressure and cholesterol. Wife takes iron supplements and has

---

[3] Husband's accountant estimated that husband can withdraw $4,018 per month for a period of 10 to 15 years, assuming returns of 6 percent to 10 percent, without depleting the principal. In fact, husband's investments recently have not produced those returns and, although the account value grew from approximately $94,000 at the time of dissolution to nearly $350,000 at the time of the modification hearing, the portfolio has lost money since husband's retirement.

arthritis for which she takes nonprescription pain medication. She anticipates that she will require surgery on her knee in the near future.

Reasoning that wife's financial condition had improved since the dissolution and that husband's financial condition had declined due to his reduction in income after retirement, the trial court found that there had been a substantial change in circumstances and concluded that the original purposes of the award of spousal support had been satisfied and that husband's spousal support obligation should be terminated. On appeal, wife contends that the trial court erred in determining that there had been a substantial change in circumstances and in terminating the support award after declining to consider husband's monthly withdrawals from his retirement funds as "income."

ORS 107.135 provides, in part:

"(3)   In a proceeding under this section to reconsider the spousal or child support provisions of the judgment, the following provisions apply.

"(a)   A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support * * *.

"(b)   If the judgment provided for a termination or reduction of spousal support at a designated age in anticipation of the commencement of pension, Social Security or other entitlement payments, and if the obligee is unable to obtain the anticipated entitlement payments, that inability is sufficient change in circumstances for the court to reconsider its order of support.

"(c)   If Social Security is considered in lieu of spousal support or partial spousal support, the court shall determine the amount of Social Security the party is eligible to collect. *The court shall take into consideration any pension, retirement or other funds available to either party to effect an equitable distribution* between the parties and shall also take into consideration any reduction of entitlement caused by taking early retirement.

"(4) In considering under this section whether a change in circumstances exists sufficient for the court to reconsider spousal or child support provisions of a judgment, the following provisions apply:

"(a) The court or administrator, as defined in ORS 25.010, shall consider income opportunities and benefits of the respective parties from all sources, including but not limited to:

"(A) *The reasonable opportunity of each party, the obligor and obligee respectively, to acquire future income and assets.*

"(B) *Retirement benefits available to the obligor and to the obligee.*"

(Emphases added.)

■ An award of spousal support may be modified based on a finding that there has been a substantial, unanticipated change in circumstances since the time of the earlier award. *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000). If the requisite change in circumstances is established, " '[t]he overriding consideration in determining the appropriate amount of spousal support is what is "just and equitable," * * * under the totality of the circumstances.' " *Halsey and Halsey*, 180 Or App 169, 177, 41 P3d 1119 (2002) (quoting *Albrich and Albrich*, 162 Or App 30, 37, 987 P2d 542 (1999)).

■ In determining whether there has been a substantial, unanticipated change in circumstances, ORS 107.135(4)(a) requires the court to consider "income opportunities and benefits of the respective parties from all sources," and subparagraph (4)(a)(B) includes "retirement benefits available to the obligor and to the obligee." *See Albrich*, 162 Or App at 35. The dissolution judgment in this case did not make express provision for or anticipate changes in the parties' income as a result of retirement or Social Security. We conclude that, in light of the changes in the parties' resources due to changes in employment status and the receipt of Social Security benefits, there has been a substantial change in circumstances. *See Halsey*, 180 Or App at 177 ($1,529 change in parties' combined income reflects a substantial change in economic circumstances). We therefore reject wife's contention that the

trial court erred in finding that there had been a substantial, unanticipated change in the parties' economic circumstances.

■ Wife's remaining contention is that it was not just and equitable to terminate spousal support under the totality of the circumstances. In considering whether a modification or termination of spousal support is appropriate, we take into account the original purposes of the award; if they have been satisfied, it is generally appropriate to terminate the award. *Bates and Bates*, 303 Or 40, 46, 733 P2d 1363 (1987); *Blake and Blake*, 130 Or App 259, 262, 880 P2d 972 (1994). In this case, the original judgment stated that the need for support was justified by the length of the marriage and the substantial disparity in the parties' earning capacities. The trial court found that the purposes of the award had been satisfied.

■■ Wife disagrees. In particular, wife contends that, in making its determination, the trial court erred in failing to adequately consider husband's withdrawals from his retirement accounts. Although the court did consider husband's retirement funds in assessing the parties' relative financial resources, the court stated that

> "[t]he monthly amount of funds that [husband] is choosing to withdraw * * * from his 401K account to meet his monthly expenses is not determinative in this matter since it is not income and the rate of withdrawal could be either dramatically increased or dramatically decreased by [husband] at his discretion."

We agree with the trial court that no single factor is determinative in the modification assessment. *See* ORS 107.105(1)(d). However, in determining a just and equitable award of spousal support, appropriate consideration must be given to husband's entire retirement benefits, not merely any income derived from them.

That interpretation is consistent with paragraph (3)(c), which, in cases where "Social Security is considered in lieu of spousal support or partial spousal support," directs the court to "take into consideration any pension, retirement or other funds available to either party to effect an equitable distribution between the parties[.]" Paragraph (3)(c) makes

no distinction between the principal and income components of retirement funds.[4]

In addition, in determining whether a change of circumstances has occurred, ORS 107.135(4)(a) requires the court to consider "income opportunities and benefits of the respective parties from all sources." We conclude that "income," as the term is used in paragraph (4)(a), modifies "opportunities," not "benefits." That interpretation is confirmed by the text of subparagraph (4)(a)(B), which requires the court, in making its assessment, to consider "retirement benefits," not "retirement income." It also is reinforced by subparagraph (4)(a)(A), which provides that the court shall consider "[t]he reasonable opportunity of each party, the obligor and obligee respectively, to acquire future income and *assets*," not merely future income. Although subsection (4) applies to the determination whether a change of circumstances has occurred, not the determination whether a modification is just and equitable, subsection (4) provides useful context for the latter inquiry. Accordingly, we conclude that, in determining whether a modification of spousal support is just and equitable in the totality of the circumstances, the entire retirement benefit available to a party—principal as well as income—must be considered.

---

[4] Although we have not previously considered the precise issue before us in this case, our decisions construing ORS 107.135(4) are not to the contrary. In *Albrich*, we held that, in the modification inquiry, the court is required to consider "each party's income opportunities from all sources, irrespective of whether the opportunity derives from property awarded in the marital property division." 162 Or App at 36. We reasoned that ORS 107.135(4)(a) does not restrict the court's consideration to income that either party is presently receiving and "makes no distinction between income opportunities derived from previously divided marital property and those opportunities derived elsewhere." 162 Or App at 35. We noted that, with regard to retirement benefits, ORS 107.135(4)(a) directs the court to consider "[r]etirement benefits available to the obligor and to the obligee," 162 Or App at 35 (brackets in original), and concluded that the statute "not only permits the court to consider retirement benefits and other income opportunities, whatever their source, but compels the court to do so." *Id*. at 36.

In *Halsey*, citing *Albrich*, we stated that "income opportunities" include "income realized from retirement accounts after the obligor or the obligee has retired, even though such accounts also were treated as property in the division of assets in the dissolution judgment." 180 Or App at 179. We concluded in that case that it was appropriate to consider "both parties' retirement benefits in determining a just and equitable amount of spousal support." *Id*.

In giving such consideration here, it is important to recall that the original spousal support award was based on a substantial disparity in the parties' earning capacities after the dissolution of a long-term marriage. In such a context, where the parties have retired at the time of a modification trial and the obligor has begun to deplete his or her retirement funds for living expenses, the goal of maintaining the relative positions of the parties can lead to a blurring of the distinction between the income and principal components of a retirement account. So, for example, in *Halsey*, which, like this case, involved the modification of a maintenance spousal support award after a long-term marriage and the obligor's post-dissolution retirement, we concluded that a modified support award that roughly preserved the overall percentage division of *cash flow* between the parties that was provided by the initial award was just and equitable in the totality of the circumstances. 180 Or App at 179.

However, a cautionary note is warranted. Maintaining the parties' positions relative to each other is where the analysis begins, but our ultimate duty is to do what is just and equitable under the totality of the circumstances. ORS 107.105(1)(d); *Albrich*, 162 Or App at 37. Among other equitable considerations at play is the notion that, having divided their existing assets at the time of dissolution, parties generally expect to separately retain and acquire assets after dissolution without automatically subjecting them to further division in the guise of spousal support. Our resolution of this case is deliberately conscious of that point. Second, a meticulous consideration of retirement benefits should, if the record permits, distinguish between the income and principal components of such benefits. The record in this case is deficient in that respect. It shows that the value of husband's 401(k) account increased from $94,000 to $348,254 between the time of dissolution and the modification hearing. However, the record does not indicate what portion of that increase consisted of additional contributions as opposed to earnings. The same is true of the record as it relates to wife's retirement account. A better developed record would assist our *de novo* review by permitting us to more accurately assess the historical earnings of the parties' retirement accounts so as to determine, for example, their future growth

potentials or the role that a party's industry and thrift may have played in the growth of the accounts. With the foregoing factors in mind, we examine the record before us.

Considering each parties' savings, including all retirement accounts, the parties' overall circumstances have improved since the dissolution of their marriage. Wife's economic improvement is due, in part, to her frugality and careful savings, but it is also due to the fact that her income over the years, including spousal support, exceeded the parties' expectations. Although wife had chosen not to begin depleting her retirement and savings accounts at the time of the modification hearing, those funds were available to fill the cash-flow gap when her part-time employment ended. *See* ORS 107.135(3)(c); ORS 107.135(4)(a)(B). At the time of hearing, wife had approximately $1,858 per month available to her without taking into account her part-time employment income[5] or her 403(b) or savings accounts. Those accounts, in combination, were worth approximately $115,000 at the time of the hearing.

However, husband's income also increased after dissolution, allowing him to acquire substantial assets, and his investment and retirement accounts have more than twice the value of wife's. Husband had available income of $1,601.85 per month[6] without taking into account his retirement fund withdrawals. It is true that husband's expenses are higher than wife's and that to maintain his current lifestyle, he must draw on and deplete his retirement funds. However, taking into account those withdrawals and the potential cash flow available to wife if she similarly began to withdraw from her savings and 403(b) accounts, the parties' potential cash flows, unadjusted for spousal support, were as follows: Husband, $5,620; wife, approximately $3,078.[7]

---

[5] That total was composed of Social Security income net of Medicare ($1,014), pension income ($650), interest income ($125), and dividends ($69).

[6] That total consisted of Social Security income, net of Medicare ($1,589), and interest and dividends ($13).

[7] That total consists of wife's current income, exclusive of support, $1,858, plus a withdrawal from her 403(b) and savings accounts that would replace her part-time employment income of $1,220 per month. Even assuming that those accounts produced no income, it would take wife almost eight years to deplete them. With any reasonable rate of return, wife could withdraw from those accounts at a rate roughly comparable to husband's accountant's amortization schedule for the depletion of husband's 401(k) account. In that scenario, both parties would be required to

■  Based on the totality of the parties' circumstances, we conclude that wife is entitled to a continuation of spousal support, albeit at a reduced level. A reduction of monthly spousal support to $250 will allow husband to draw from his retirement funds for more years than his present support obligation would permit. Conversely, such an adjustment will enable wife to preserve her savings for a longer period than if support were terminated. It also will provide her with a small source of cash flow for expenses that are anticipated due to the age of her vehicle and her home, and it gives due consideration to the relatively frugal lifestyle that wife has led since the parties' marriage was dissolved. Moreover, that level of spousal support will closely approximate, at least on a potential cash flow basis, the division effectuated by the spousal support award in the judgment of dissolution. Accordingly, we conclude that it is just and equitable that husband's spousal support obligation be reduced to $250 per month indefinite support.

Remanded for modification of judgment reducing monthly spousal support to $250.

---

treat their retirement accounts and other savings as available for their personal support. *See* ORS 107.135(3)(c) (requiring the court, in reconsidering spousal support, to "take into consideration any pension, retirement or other funds available to either party").