Argued and submitted March 8, 2011, reversed March 28, petition for review denied October 4, 2012 (352 Or 564)

In the Matter of the Marriage of

Pearl Yvonne SPILLANE,
aka Pearl Yvonne Chilcoat,
*Petitioner-Appellant,*

*and*

Maurice Delane SPILLANE,
*Respondent-Respondent.*

Klamath County Circuit Court
0204655CV; A142043

275 P3d 974

Marci Warner Adkisson, Judge.

George W. Kelly argued the cause and filed the briefs for appellant.

Rebecca Whitney-Smith argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Wife appeals a supplemental judgment terminating an earlier award of indefinite maintenance spousal support, ORS 107.135. She argues that the trial court erred in terminating support because husband failed to establish that a current, substantial, and unanticipated change in his circumstances warrants termination. Husband contends that his declining health, the loss of a business relationship, and the economic downturn have decreased his income and earning ability so that the termination of spousal support is just and equitable under the circumstances. On *de novo* review, ORS 19.415(3) (2007),[1] we conclude that husband failed to demonstrate a sufficient change in his circumstances as required by ORS 107.135. Accordingly, we reverse.

When the parties dissolved their 28-year marriage in 2005, wife was 61 and husband was 62 years old. Wife lived in a small one-bedroom apartment while husband remained in the marital home with his new partner. Wife is a certified nursing assistant (CNA). Her gross annual income in 2003 was $21,388. Husband is a self-employed trucker and hobby farmer with a variable annual income. In 2003, husband's hobby farm operated at a loss and his before-tax trucking income was $77,459, primarily from hauling milk and hay for a local dairy.

At dissolution, husband argued that the court should deny wife's request for spousal support based on wife's relative independence, husband's advancing years, his poor health, and the physical nature of his work. The court awarded wife spousal support, explaining:

> "The following factors warrant an award of indefinite maintenance spousal support in the amount of $1,000.00 per month[:] Wife's age, her limited earning capacity, and the de minimis value of her retirement. Additionally, Wife's limited income has prevented her from enjoying the standard of living enjoyed during the marriage, while Husband has been able to do so.

---

[1] This appeal was filed before the June 4, 2009, effective date of the 2009 amendments to ORS 19.415(3), which made *de novo* review discretionary with the Court of Appeals. Or Laws 2009, ch 231, §§ 2, 3.

"* * * [Wife] has very limited disposable income. In contrast, Husband has been able to enjoy the family home and to have his companion and his daughter and grandchildren reside with him. His companion is employed and can contribute to household expenses. Husband's present income from the dairy is well in excess of Wife's, and it is likely that will continue into the foreseeable future. Husband has had sufficient income to acquire collector cars, purchase new farming equipment and, by and large, enjoy the standard of living the parties had during the marriage."

(Footnote omitted.)

Approximately three years later, in April 2008, husband moved to terminate or reduce his spousal support obligation pursuant to ORS 107.135(3)(a), which provides, in part:

"In a proceeding under this section to reconsider the spousal or child support provisions of the judgment, the following provisions apply:

"(a)   A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse."

Husband asserted three changes in his economic circumstances from the time of dissolution. First, his declining health had impaired his ability to truck and farm. Second, his primary source of income was lost when the local dairy closed in October 2007. Third, the economic downturn had negatively affected his ability to generate alternative income or liquidate his property. Husband's accountant and healthcare practitioner both testified on his behalf. That testimony is described below.

The trial court terminated spousal support, reasoning:

"Based upon the evidence at trial, it is clear that there has been a substantial and unanticipated change in [husband's] economic circumstances. This is due in part as a result of the current economic times and in part due to his failing health. A close reading of [the dissolution] opinion does not convince me that [the dissolution judge] made her decision anticipating his health would decline to such a degree that he could no longer work to the same degree he was at the time of the dissolution trial. The evidence in regard to his failing ability to work goes far beyond the testimony of [husband's healthcare practitioner]. It was clear based upon both [husband's] and his current wife's testimony that he is no longer physically able to work to his previous level.

"Therefore, his ability to continue paying spousal support in the amount as previously ordered is clearly compromised by the two changes in his circumstances.

"The stated order was to allow [wife] to enjoy the standard of living she enjoyed during the marriage. Currently, [husband] is no longer able to enjoy the standard of living he enjoyed during the marriage. The Court's obligation is to do what is just and equitable under the circumstances, which is to terminate the spousal support."

Wife appeals the resulting supplemental judgment.

"[T]he party requesting the modification of an award of spousal support has the burden of demonstrating a change in circumstances, unanticipated at the time of the dissolution, in the one spouse's ability to pay and/or in the other's need therefor." *Pratt and Pratt*, 29 Or App 115, 117, 562 P2d 984 (1977); *see also Haley and Haley*, 228 Or App 731, 736, 208 P3d 1006 (2009).

Wife contends that husband failed to meet his burden to prove a current, substantial, and unanticipated change in circumstances; rather, wife argues, husband's assertions and supporting evidence merely pertain to speculative, future occurrences that *may* decrease his income and affect his ability to pay spousal support. Conversely, wife emphasizes that her economic circumstances have not changed because she has the same job that she had at the time of the dissolution and her earning capacity has not substantially increased; nor have her expenses decreased. Wife

contends that husband is currently able to pay spousal support based on his business income and property he acquired after the dissolution, supplemented by Social Security and his new wife's contribution to the household. Wife posits that, even if husband's income has decreased, and he is unable to pay his other obligations on recently incurred debt, it is not just and equitable that she should be made to suffer for his choices. Finally, wife argues in the alternative that spousal support should be decreased rather than terminated.

Husband remonstrates that he has experienced an unanticipated and substantial change in circumstances that warrants termination. On *de novo* review, we evaluate the parties' contentions and supporting evidence to determine whether husband has established the requisite substantial change in circumstances justifying the termination of his support obligation. We conclude that he has not for the reasons explained below.

Husband asserts that two main health problems have decreased his earning ability: chronic obstructive pulmonary disease (COPD) and hearing loss. Husband's COPD, caused by smoking, has decreased his lung capacity, which impairs his ability to exchange oxygen and carbon dioxide. Husband suffers shortness of breath and fatigue when walking short distances and he has trouble sleeping. COPD makes it difficult for husband to perform trucking tasks such as placing tire chains, climbing on his truck, and moving milk hoses. Nevertheless, husband has continued to perform his work and testified that he had hauled milk every day for three weeks preceding the modification trial. Husband is also unable to do some activities on the farm because, as a result of his COPD, he is susceptible to bronchial infections from exposure to cold air, dust, and fumes. However, husband testified that he is able to do some work on the farm, avoiding irritants by remaining in his truck or his enclosed tractor cab. Since August 2008, husband has worn oxygen at night and when he is idle at home. Husband has an oxygen tank on wheels, but he has not attempted to use it while walking.

Husband had recorded hearing loss in 2000, and he is "near deaf" in his left ear. He does not wear the doctor-recommended hearing aids because he is unwilling to

purchase them and he believes that his left ear cannot be helped. However, husband ultimately testified that his hearing loss does not currently affect his ability to work.

In addition to the physical limitations caused by his health problems, husband could lose his commercial driver's license if he fails the physical examination, which, by law, he is required to take every two years and which, among other things, tests pulmonary function and hearing ability. 49 CFR 391.41. Husband was scheduled to have such an examination two weeks after the modification hearing. Husband's healthcare practitioner—who would administer the exam—testified that husband would probably not pass the exam in his current state, but that, with the assistance of mobile oxygen and hearing devices, husband may be able to maintain his commercial driver's license and continue to perform trucking tasks. Husband testified that, if faced with losing his license, he is willing to utilize medical devices that could help him continue to work.

*Albrich and Albrich*, 162 Or App 30, 987 P2d 542 (1999), informs our analysis of whether husband's health problems constitute a substantial change in circumstances. In *Albrich*, we determined that the husband had experienced a substantial change in circumstances sufficient to warrant a reduction in the husband's spousal support obligation where "[p]resently, husband *no longer works* as an oncologist because he suffers from a neurological disorder that causes uncontrollable neck spasms and cognitive problems that prevent him from effectively working with patients." *Id.* at 32 (emphasis added). On *de novo* review, we found that the "husband's economic circumstances [had] changed substantially in that his medical condition [had] caused his unanticipated retirement from medical practice[,]" so that it was " 'just and equitable' to reduce [the] husband's spousal support obligation based on his loss of employment income." *Id.* at 37.

Husband's health situation is distinguishable from *Albrich*, where the husband was presently physically incapable of performing his job. We credit husband's testimony that he gets tired and out of breath and that it takes him longer to do things; however, husband failed to demonstrate a *current* inability to earn a wage sufficient to support his

own standard of living and pay spousal support. Husband was working at the time of trial, and he had not yet completed—much less failed—the physical exam required to maintain his commercial driver's license. *See Curran and Curran*, 100 Or App 330, 333, 786 P2d 205 (1990) ("[M]odifications of spousal support are properly based only on evidence of a party's present or future ascertainable ability to pay, not on speculative or uncertain future events."). Unlike the husband in *Albrich*, husband's inability to work due to his health remains speculative at this time and, thus, does not warrant termination.

Moreover, husband failed to show that his decline in health was unanticipated. Husband's COPD and hearing loss are degenerative conditions that predated the parties' dissolution, and husband had initially argued against the award of spousal support based on his advancing years and declining health in light of the physical nature of his work. In awarding support, the trial court implicitly rejected those arguments. Husband's healthcare practitioner testified that, from the time that he began treating husband in 2000, "[husband] has had a fully progressive disease and * * * over the last nine years, of course, he has progressed in his disease." The practitioner testified that there is "[n]othing new, other than it is a progressive disease[,]" and husband's advancing age contributes to the deterioration of this health. We conclude that husband failed to prove that his health problems constitute an unanticipated change in circumstances.

We do not mean to indicate that the decline in a person's health due to a degenerative disease can never constitute a change in circumstances. Here, the dissolution court was aware that husband had worsening health problems, and the court was also aware of the physical nature of his work. That awareness leads us to conclude that the dissolution court anticipated husband's decline in health when it awarded indefinite maintenance spousal support.

Unlike husband's decline in health, the closure of the local dairy is a change that was unanticipated at the time of the award. From 1997 to 2007, husband's primary source of income was from hauling hay and milk for the dairy. The dissolution court observed that "Husband's present income

from the dairy is well in excess of Wife's, and it is likely that will continue into the foreseeable future." In 2003, husband's income was $77,459 after expenses and before taxes.[2] In the following years,[3] husband's respective after-expense and before-tax income was $87,980 in 2005; $100,759 in 2006; and $56,102 in 2007.

After the dairy closed, husband began hauling milk for a different company every other day instead of every day as he had for the local dairy. Husband's 2008 gross trucking income was $99,838. Despite his earnings, husband claimed that he was financially unable to pay support and offered the testimony of his accountant to support his claim. The accountant estimated that, as a result of the dairy closure, husband's trucking income would decrease dramatically while husband's trucking expenses would remain constant, resulting in an overall loss of $5,000 in 2008. When the accountant testified, in March 2009, he had not received husband's self-employed trucking and farming business records for 2008. The accountant's projections were based on husband's business records from 2007, other information that husband had provided, and the accountant's own assumptions about 2008. The accountant apparently assumed that husband would not obtain additional work beyond hauling every other day. In fact, the record shows that husband has taken additional short-term jobs to replace his income from the dairy closure. For example, during the three weeks preceding the modification proceeding, husband hauled for the dairy every day on a short-term agreement precipitated by an abnormally abundant milk supply. Additionally, husband has purchased a dump truck in an attempt to diversify his hauling ability, although he reports that he has been unable

---

[2] Husband's hobby farm generally operates at a loss, and he reports his trucking and farming businesses together for tax purposes. Husband takes accelerated depreciation for purchases of large equipment, which allows for a deduction against gross income. 26 USC § 179 (2010). If the deduction, counted as a loss, is greater than the income, then the tax form will show an overall loss. However, a tax loss on paper may or may not mean that a business, or an individual, actually lost money. Equipment that is purchased in one year and used over many years may be fully deducted in the first year; similarly, purchases on credit may be fully deducted in the same year, which can result in after-tax income that does not accurately represent an individual's ability to pay. For those reasons, we recount husband's after-expense and before-tax income, as did the dissolution court.

[3] Husband did not provide information for 2004.

to find gravel hauling work because new construction is down in the area.

Husband's prior annual expenses were $39,706 in 2003; $67,995 in 2005; $119,236 in 2006; and $176,511 in 2007. Assuming that the farm operated at a loss and that husband's trucking costs exceeded his trucking income, it is conceivable that he actually experienced a loss in 2008. However, husband failed to provide evidence of his expenses in 2008 beyond the accountant's estimation, which is insufficient proof that husband in fact experienced a substantial decrease in income warranting termination of spousal support.

In all events, as wife observes, even if husband had proved a substantial decline in his income, we have held that a dramatic decrease in income is insufficient to justify modification of spousal support where, depending on the totality of the circumstances, the obligor spouse has not experienced a corresponding decline in his or her standard of living. *Miller and Miller*, 207 Or App 198, 208, 140 P3d 1172, *adh'd to as modified on recons*, 208 Or App 483, 144 P3d 1061 (2006). Here, husband currently enjoys a standard of living substantially similar to the time of dissolution.

Husband continues to live in the spacious marital home along with his new wife and grandson. The house, which sits on nearly 100 acres, is approximately 3,500 square feet and has six bedrooms and four bathrooms. At the time of dissolution, 2005, the market value of that house and acreage was $500,000, with a debt of $236,000. Husband refinanced the property in 2005, in part, to pay the equalizing judgment to wife.[4] His current monthly mortgage payment on that property is $2,535 and he testified that he owes over $400,000 on the refinance. In 2007, husband purchased another house and five acres adjacent to the original property for $235,000, for which husband currently owes $200,000 with a monthly mortgage payment of $1,400.[5] In addition to the post-dissolution acquisition of real property, husband

---

[4] The parties had previously jointly refinanced the property in 1997.

[5] Husband intends to rent that property, but it is presently damaged and uninhabitable with a pending property insurance claim. Husband's new wife opined that the second property is worth no more than $80,000 in its current condition.

and his new wife also purchased personal vehicles and equipment totaling $288,000. Husband made many of those purchases on credit.

Despite the substantial real and personal property in his possession, husband claims a current inability to pay spousal support. That is so, he argues, because, due to the economic downturn, the value of his property has decreased and there is no current market for his real property or equipment.[6] However, husband offered no disinterested or expert testimony pertaining to the current market value of husband's real property, substantiating his assertion that his debt actually exceeds his equity in those properties. Further, although husband contends that there is no market for the equipment that he owns, the record discloses only minimal efforts on husband's part in that regard. We emphasize again—and finally—that, as the proponent of modification and termination, husband had the burden of persuasively demonstrating an unanticipated change of circumstances precluding him from meeting his support obligations to wife, whose needs and modest circumstances have remained unchanged.

On *de novo* review, we conclude, for the foregoing reasons, that husband failed in his burden of proof. Accordingly, the trial court erred in terminating husband's spousal support obligation.

Reversed.

---

[6] Husband does not claim, nor has he shown, that his post-dissolution purchases were "reasonable and necessary expenses." ORS 107.135(3)(a).