Argued and submitted September 12, 1997, affirmed February 4, 1998

## In the Matter of the Marriage of

### Peggy Lee HOAG,
*Appellant,*

*and*

### Michael Raymond HOAG,
*Respondent.*

(C90-2477DR; CA A94763)

954 P2d 184

Sharon E. Kelly argued the cause and filed the brief for appellant.

Gay Canaday argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DE MUNIZ, P. J.

**DE MUNIZ, P. J.**

Wife appeals the modification of a dissolution judgment that reduced her monthly spousal support. On *de novo* review, ORS 19.205, we affirm.

The parties' 18-year marriage was dissolved in July 1991. The parties had two children. On wife's appeal from the dissolution judgment, the record showed that husband's monthly income was $5,800 in tax-free disability insurance benefits and about $217 from coaching. *Hoag and Hoag*, 122 Or App 230, 232, 857 P2d 208 (1993). Wife, who had a high school education, had an income of $400 per month and was interested in going to college to become an elementary school teacher. *Id.* It would take wife up to five years to complete her education from which, ultimately, she would be able to earn up to $2,000 per month. *Id.* We concluded that spousal support of $2,000 per month for four years, followed by $1,000 per month for three years, would "enable wife to complete her education and to make the transition to self-sufficiency at an income level that is reasonable in light of the standard of living she enjoyed during marriage." *Id.* at 234.

The parties both remarried, and husband brought this modification proceeding seeking a termination or reduction of spousal support, arguing that wife's remarriage constituted a substantial change of circumstances supporting a change in the support award. The evidence at the modification hearing showed that husband currently receives $5,825 in tax-free disability insurance benefits, $620 in earned income and $120 in dividend income each month. Husband's new wife, who has two minor children, receives $1,474 per month in tax-free partial disability benefits and $1,218 per month in earned income.[1]

Wife and her new husband, Mr. Batton, have a prenuptial agreement that the trial court found was a "reasonable" agreement that was "intended to address legitimate concerns * * * and not * * * a sham to avoid a reduction in wife's spousal support."[2] Batton earns $3,000 per month, of

---

[1] Husband's new wife also receives child support for her two minor children.

[2] Husband does not challenge that finding.

which $1,425 is put into a household account. Wife earns $1,040 per month in part-time work. Wife attends a community college and hopes to transfer to a four-year college to pursue a degree in business.[3] One child is still part of wife's household.

■ ORS 107.135(2)(a) authorizes the modification or termination of a spousal support award when there has been a substantial change in the parties' economic circumstances. Remarriage may represent such a change, but it does not automatically terminate a support award because remarriage does not always supplant the purposes for the initial award. *Bates and Bates*, 303 Or 40, 46, 733 P2d 1363 (1987). The trial court held that husband had shown a substantial change in economic circumstances that was not anticipated at the time of the dissolution. It concluded that the purpose behind the spousal support award had "been supplanted in part" and reduced the support award to $575 per month beginning in May 1996 and terminating November 1997.

■ We first address wife's assignments of error that the trial court erred in making two factual findings that, she contends, may have had an impact on the trial court's decision. She argues that the court erred in finding that Batton contributed $1,425 per month to the household expenses, because $425 is reimbursement paid to Batton by his company for his employment-related automobile expenses. However, irrespective of the source of the $425, Batton paid that amount into a joint account as part of his household contribution. Wife cannot selectively disregard funds that were commingled and available for household expenses. *See Simmons and Simmons*, 138 Or App 230, 234, 907 P2d 1134 (1995) (when wife relied on increase in expenses caused by remarriage, wife must also include spouse's contributions to her standard of living). Wife also argues that the court erred in finding that, at the time of the dissolution, husband earned $6,700 in income. Wife is correct; husband's nontaxable monthly income was $5,800. *Hoag*, 122 Or App at 232. However, for the reasons discussed below, we do not agree that that error had an impact on the determination.

---

[3] Wife had not attended college in the winter term before the modification hearing, but she testified that she was enrolled for the spring term.

Wife argues that the court erred in reducing support because the purposes of the initial award here were to provide wife with a reasonable standard of living and to allow her the financial means to further her education, and those purposes have not been supplanted. She argues that, in order to show that spousal support is no longer needed to provide a reasonable standard of living, the court must divide the current shared incomes of the parties by the number of people in the households;[4] it must then compare the result to the parties' income, divided by the number of people in the households, under the original support award. *See Bates*, 303 Or 40; *Hall and Hall*, 86 Or App 51, 54, 738 P2d 218 (1987). Wife contends that that analysis here shows that, if spousal support is reduced, she will suffer a "drastic decline" in her standard of living while husband's personal income has increased and his expenses have decreased.[5]

Husband responds that his standard of living at the time of modification is not relevant. Rather, he argues, the original award determines the standard of living that wife had at the time of the dissolution, and the relevant economic factors at the time of modification are the available income and number of persons in the dependent spouse's household. Husband contends that the purpose of the initial award here was to assist wife in achieving educational goals that would assist her to reach self-sufficiency. He contends that the court's modification, which reduced but did not eliminate spousal support, recognizes wife's improved economic condition but still allows her time to complete her educational plan, as set forth by this court.

___

[4] Although it appears that, by the time of the remand from appeal one of the parties' children was emancipated, wife's calculations ignore that our spousal support award was based on the record, which showed she had custody of two children, ages 16 and 10. *Hoag and Hoag*, 122 Or App 230, 233, 857 P2d 208 (1993). *See* note 5.

[5] According to wife's calculations, in 1991, the anticipated income for her household was $3,404 for two people, or $1,520 per person. Now, wife contends, there are three people in her household and, when the correct amount of Batton's contribution is used, the income is $4,040 for three people, or $1,346 per person. She argues that, if spousal support is reduced to $575, the income for each person will be $871. In contrast, wife argues that, in 1991 after payment of spousal support, husband had $4,017 in personal after-tax income for himself, and, in 1996, husband had $4,565 in personal after-tax income.

Modification of spousal support is determined by considering the purposes for which the award was made. *Bates*, 303 Or at 46. The award here was to provide a proportionate standard of living for wife while she completed her education and made the transition to self-sufficiency. *Hoag*, 122 Or App at 234. The original support award presumptively reflects the most equitable distribution of income between the parties. *Bates*, 303 Or at 47. It is apparent from our opinion that we determined that distribution here to be $2,000: that was the amount that wife would ultimately be able to earn, and we did not award indefinite spousal support. Our award of $2,000 a month for four years, when added to wife's monthly income of $400, provided that standard of living and gave added assistance for schooling; $1,000 support for three years thereafter acknowledged that wife's monthly income would not immediately reach $2,000. In light of the purpose for the award and the determination of the equitable distribution of property, we agree with husband that his household income and size at the time of modification are not major considerations in the analysis here.

Although modification of a spousal support award is not a matter of applying a mathematical formula, s*ee Hall*, 86 Or App at 54 (*Bates* did not provide a specific formula but, rather, factors that must be considered), nonetheless, wife's income and Batton's contribution provide a standard of living that we previously concluded was proportionate to that which wife enjoyed at the time of marriage. Wife asserts, however, that she had a "reasonable anticipated increase in earned income to $1,404 per month" at the time of the initial award. Wife does not explain the basis of that expectation, and, at the time of the initial award, her $400 monthly income was from a preschool that she operated, *Hoag*, 122 Or App at 232, whereas she now works part time for a law firm. It is apparent from our opinion that, although our initial award may have recognized a possibility of some increase in income during her schooling, we did not anticipate that wife's income would more than double while she pursued her education. *See Simmons*, 138 Or App at 233 ("Although the original award may have anticipated that wife would receive small incremental income increases over a period of time, a

64 percent wage increase in a four-year period does not fall within that characterization.").

Wife argues, however, that the original award was also intended to coincide with, and still does coincide with, her anticipated completion of a degree and reentry into the job market. In modifying the spousal support award, the trial court did not ignore the educational purpose of the initial award. Originally, the $2,000 monthly award was to be reduced at the time the award will now terminate. The continued spousal support to that date is appropriate to enable wife to continue her education for the time originally anticipated.

We agree with the trial court that the purposes of the initial spousal support award here have been "partly supplanted" and with the court's modification of the award. Because of our resolution, we do not reach wife's final assignment of error regarding attorney fees.

Affirmed. No costs to either party.