Argued and submitted May 24, order and supplemental judgment reversed; judgment awarding attorney fees reversed August 2, appellant's petition for reconsideration filed August 16 allowed by opinion October 4, 2006
See 208 Or App 483, 144 P3d 1061 (2006)

In the Matter of the Marriage of

Laurel R. MILLER,
*Appellant,*

*and*

Lawrence B. MILLER,
*Respondent.*

00-DR-0299; A122208

140 P3d 1172

Clayton C. Patrick argued the cause and filed the briefs for appellant.

Walter L. Cauble argued the cause for respondent. With him on the brief was Cauble, Dole & Sorenson.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

_____

* Rosenblum, J., *vice* Richardson, S. J.

HASELTON, P. J.

## HASELTON, P. J.

Wife appeals from an order and supplemental judgment modifying husband's spousal support obligation, *see* ORS 107.135(3)(a), and a judgment ordering her to pay attorney fees.[1] On *de novo* review, *Crook and Crook*, 199 Or App 260, 262, 110 P3d 648 (2005), we conclude that husband failed to meet his burden of establishing the requisite "substantial change" of circumstances. ORS 107.135(3)(a). We further conclude that the trial court erred in awarding husband attorney fees. Accordingly, we reverse.

Husband and wife were married from 1987 until 2000. Throughout the marriage, husband worked as a dentist. Although wife initially worked at a hospital, she did not work outside of the home during the last eight years of the parties' marriage. During the marriage, the parties enjoyed a high standard of living—they traveled often, owned various national and international properties, and often dined in restaurants.

In March 2000, wife filed for dissolution, and, in June 2000, the trial court entered a stipulated judgment and decree of dissolution. Attached to, and incorporated into, that stipulated judgment, was a marital settlement agreement (MSA), which the parties had executed and the court had approved. Paragraph A of the MSA, entitled "Spousal Support," provides:

> "Husband shall pay to wife the sum of $3,150 per month spousal support on the first day of each month beginning with the month of April, 2000, until the expiration of five years from the entry of the decree.

> "In the event husband is rendered unable to practice his profession because of any illness or injury, spousal support

---

[1] Wife initially appealed from the order modifying husband's spousal support obligation. That order was appealable. *See* ORS 19.205(2)(c) (2001) (providing for appeals of post-judgment orders affecting substantial rights of the parties). Thereafter, the court entered its judgment awarding attorney fees, and wife filed an amended notice of appeal. Finally, the parties filed a stipulated motion pursuant to ORCP 71 A for entry of a supplemental judgment correcting a clerical error in the original modification order, which the trial court allowed, and wife filed a second amended notice of appeal from that supplemental judgment.

shall be terminated two months after husband becomes disabled if he does not receive any disability insurance income. If husband does receive disability insurance income, then the spousal support shall be reduced by the same percentage of reduction in his income. This reduction would be calculated by comparing his average monthly income over the 12 months preceding the disability with his monthly income after the disability."

The purpose of that support was to assist wife's transition back into the work force.

In October 2002—approximately two and one-half years into his five-year support obligation under the MSA—husband filed a motion to modify spousal support, seeking to terminate that obligation. As described more fully below, husband contended that termination was warranted for either or both of two reasons: (1) wife had recently (in September 2002) remarried and, because of that remarriage, "no longer needs to depend upon spousal support"; and (2) husband's income had been substantially reduced because of economic downturns and personal health issues.[2]

Wife responded, first, that the "spousal support" obligation embodied in paragraph A of the MSA was not spousal support at all but was, in fact, a property division, and, thus, not subject to modification. Alternatively, wife argued that the allegedly changed circumstances—*viz.*, the consequences of her remarriage and the reduction in husband's income—were not "substantial" and, therefore, that modification would not be proper.

The trial court agreed with husband that the obligation at issue was a spousal support obligation and that a substantial change had occurred. Accordingly, the court modified husband's monthly obligation. The court explained its reasoning as follows:

"[Wife's] [re]marriage * * * has substantially changed her circumstances. [Wife's new husband] can be characterized as a land rich, income poor husband who, with the physical

_____

[2] In relying on his own economic circumstances, husband did not claim that "disability" entitled him to modification under the terms of the MSA. Instead, husband relied on the general power of a court to modify spousal support based on a substantial change in circumstances. ORS 107.135(3)(a).

and financial help of his new wife * * * continues to invest in the future of the land and business that is presently on the market * * *. I am satisfied that this investment of time and money will ultimately pay off and [wife] will receive benefit for her investment therein. Until the investment pays off, [wife's] benefit is fairly modest. Essentially, [wife] receives free room and board, no taxes or property insurance. In addition, [wife] is able to use her spousal support to assist [her new husband] with the restaurant and his personal obligations such as monthly child support paid to his former spouse. As a result of these facts, the Court finds that spousal support should be reduced but not terminated * * *."

The court determined that the changes in circumstances warranted reducing husband's obligation by one-half, to $1,575 per month. The court continued:

"[Husband's] earnings and earning capacity [have] substantially decreased. * * * The Court finds that it is reasonable [that his various health problems] have lessened [his] ability to work hard. In addition, there was uncontroverted testimony that the pronounced downturn in the economy has hurt his business."

Accordingly, based on the changes in husband's circumstances, the court further reduced husband's support obligation to $1,000 per month. The court subsequently granted husband's petition for attorney fees in the amount of $9,499.25.

■     On appeal, wife reiterates her argument to the trial court. Wife again contends that the "spousal support" obligation under paragraph A of the MSA is, in fact, a form of periodic property division, and, thus, is not subject to modification. As support for that argument, wife points to paragraph M of the MSA, titled "Successors Bound," which provides:

"Each and every provision here shall inure to the benefit of, and be binding on, the heirs, assigns, personal representatives, and all other successors in interest of each party."

Wife contends that (1) because the "heirs [and] assigns" provision applies to "[e]ach and every provision" of the MSA, it necessarily applies to the "spousal support" provision; (2) the effect of the two provisions in combination is that, if wife died

before the end of the five-year term, husband would still be obligated to make the "support" payments to wife's estate; (3) a hallmark of spousal support is that the beneficiary's death terminates the obligation; and (4) consequently, the "spousal support" obligation under the MSA is not, in fact, spousal support.

Husband responds that paragraph M does not apply to the "spousal support" provisions. Further, and alternatively, husband contends that, in all events, the proper characterization of the payment obligation is to be determined based on the totality of circumstances—and, here, those circumstances establish that "spousal support" under the MSA is, in fact, spousal support. We agree with husband's latter contention.

■ ■ "The distinction between a property division and spousal support in a judgment of dissolution is important because support orders are judicially modifiable, while property divisions are not." *Thomas and Thomas*, 160 Or App 365, 369, 981 P2d 382 (1999). No single fact is capable of distinguishing between the two types of payments. *See id.* Instead, we look to the facts of each case for the various "earmarks of spousal support" to determine the proper characterization. *Esler and Esler*, 66 Or App 452, 454, 673 P2d 1386 (1984). We have recognized a variety of relevant factors, including: (1) how the obligation was denominated, or "labeled," in the MSA; (2) whether the obligation requires monthly payments; (3) whether the obligation is interest-bearing; (4) whether the obligation survives the death of the parties; (5) how the parties have characterized the payments for tax purposes; and (6) whether a spousal support award would have been appropriate in the case. *See id.* at 454 (applying factors); *see also Fletcher and Fletcher*, 72 Or App 708, 712-13, 696 P2d 1182, *rev den*, 299 Or 251 (1985) (Rossman, J., dissenting) (enumerating relevant factors relied on in prior cases).

Here, those factors decisively support a determination that the MSA embodies a spousal support obligation. Even assuming that wife is correct that, by virtue of paragraph M, the obligation would survive the death of either party—and except for the parties' respective treatments of

the payments for tax purposes, which is neutral[3]—all of the remaining factors militate in favor of a spousal support characterization: The MSA denominates the obligation as "spousal support"; the obligation is monthly; the obligation is not interest-bearing; and, given wife's circumstances, *viz.*, that she had been unemployed during the last eight years of the marriage, a spousal support award would have been proper in the case to assist wife's transition into the job market.

We note further, and finally in this regard, that, under paragraph A, the monthly payment obligation was subject to modification upon a reduction in husband's income or earning capacity due to disability. *See* 207 Or App at 200-01. That feature is significant in two respects. First, tying the amount of support to the payor spouse's income-generating capacity is classically a feature, or "earmark," of spousal support. Second, the express provision for modification contradicts wife's premise that the payment obligation is, intrinsically, not subject to modification. In sum, paragraph A of the MSA embodies a spousal support obligation and is, thus, subject to modification upon husband's making the requisite showing.

We turn, then, to whether husband established the requisite unanticipated "substantial change" in the parties' circumstances. ORS 107.135(3)(a); *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000). Modification is proper if the original purpose of the award has been fulfilled, *Moser and Gilmore*, 184 Or App 377, 380-81, 56 P3d 417 (2002), or if subsequent changes have substantially affected one party's ability to pay or the other party's need for support, *see Weber and Weber*, 337 Or 55, 65-66, 91 P3d 706 (2004).[4] However, as a

---

[3] Wife's accountant testified that, in his opinion, the obligation is best characterized as a property division for tax purposes and that wife had treated the payments as such. Husband's accountant testified to the contrary and husband has treated his payments accordingly.

[4] The inquiry in determining whether a change is "substantial"—and, thus, sufficient to justify modification—may differ depending on the facts of a particular case. For example, "[w]here it is impossible to ascertain [the purpose of an award], 'our task is to maintain the relative positions of the parties as established in the initial decree in light of their changed circumstances.'" *Thomas*, 160 Or App at 371 (quoting *Bates and Bates*, 303 Or 40, 47, 733 P2d 1363 (1987)). In this case, however, we know the purpose of the award, and, thus, our task is to determine whether the changed circumstances materially affected that purpose.

general principle, it is the policy of the Oregon courts to enforce an agreement voluntarily entered into by the parties. *Id.* at 64-65.

■      "The burden of establishing a change of circumstances is on the party requesting the change." *Crook*, 199 Or App at 265; *Ganger and Little*, 139 Or App 350, 354, 911 P2d 1276 (1996) (burden does not shift in remarriage cases). Before the trial court, husband asserted two distinct changes in circumstance, either or both of which compelled modification: (1) the financial consequences of wife's remarriage and business involvement with her new husband, and (2) husband's decline in earnings. Wife contends that the trial court erred in basing modification on both of those considerations. Before addressing the substance of wife's arguments, we recount the material facts as we have determined them on *de novo* review.

At the time husband and wife executed the MSA, in March 2000, wife had been living with Charles Hamilton for approximately four months. Hamilton is a businessman who owns and operates a restaurant/inn on the Rogue River. In September 2002, less than three weeks before husband filed his motion to modify, wife and Hamilton were married—and, shortly thereafter, the two began living in a slightly modified banquet room at the inn.[5]

Between 2000 and the modification hearing in May 2003, wife invested almost $100,000 in the restaurant/inn business.[6] In addition, she regularly worked at the restaurant, performing various duties, but did not receive any payment for her work there. Because wife lives in the banquet room with Hamilton, she does not pay for "outside" housing. In addition, wife eats most of her meals at the restaurant/inn.

At the time of the modification proceedings, the restaurant/inn was on the market for $995,000. Hamilton had attempted to sell the business on two prior occasions. The

---

[5] The record does not disclose where wife and Hamilton had lived previously.

[6] There is substantial debate in the record regarding whether wife is, or has been held out as, an "owner" or merely an "employee" of the business. Because that matter is ultimately immaterial to our analysis, we do not resolve it.

first listing offered the business and real property for approximately $600,000. The second offered the business only (without the real property) for approximately $150,000. Both offers ran for six months without success. In Hamilton's opinion, the business is worth the $995,000 asking price "[i]f we can find the right person that will pay that." During the three years preceding the modification proceedings, the restaurant/inn did not make a profit, and Hamilton had not been able to take a salary.[7]

Since the dissolution, husband has had a variety of health-related concerns. In 2000, husband received injections in his back to relieve "arthritic degeneration" and in his throat to relieve sleep apnea. He has undergone surgery to remove a nasal growth and has had precancerous lesions removed from his ears. Finally, in April 2002, husband was diagnosed with prostate cancer and later underwent surgery to remove the cancer. Each of those procedures has apparently been successful.

Husband testified that his health problems have not affected his ability to work but that they have affected his desire to maintain his former level of dental practice:

"I feel like I've recovered, but I just have a—you know, I just don't feel like working as hard anymore. I keep thinking about my life expectancy and what I'm doing with my life and how much I want to do spending—spending at that. * * * I just go a lot slower and [I'm] trying to take life a lot easier."

Aside from his personal health issues, other factors, including general economic downturns and a reduction in Oregon Health Plan referrals, have negatively affected husband's dental practice.

Husband's income has declined. In 2000, husband's gross income was approximately $350,000. His income declined over the next two years, and, in 2002, his gross income was approximately $230,000. However, and significantly, husband acknowledges that the reduction in his income has not affected his lifestyle "in any way."

---

[7] The record does not indicate whether Hamilton has other funds available to him. He has assets, the value of which are not stated, but has no monthly income.

■      With the facts so fixed, we return to wife's argu-
ments. Wife first contends that husband has failed to estab-
lish that the circumstances of her participation in the restau-
rant/inn business and of her remarriage to Hamilton compel
modification. We agree. As noted, wife did not work outside of
the home during the last eight years of the parties' marriage.
Accordingly, the parties included a support payment to assist
wife's transition back into the work force. The standard for
determining whether wife's transition to "self-support" is
complete is not mere "subsistence," but rather, is "the stan-
dard of living during the marriage." *Bates and Bates*, 303 Or
40, 43, 733 P2d 1363 (1987).

Here, the evidence does not establish that wife's par-
ticipation in the restaurant/inn business with Hamilton has
yielded income permitting wife to enjoy a lifestyle that begins
to approach the parties' standard of living during the
marriage. It may be, as the trial court observed, that the
restaurant/inn business and wife's financial investment and
"sweat equity" in that business may eventually pay off. But
any such benefit or return had not been realized as of the
time of the modification proceedings. Rather, wife and
Hamilton lived in the modified banquet room of a business
that has not been profitable for three years. Neither wife nor
Hamilton had been able to draw a salary from the business.
Although the business was on the market at the time of the
proceedings (for the third time), it had not sold. Accordingly,
husband failed to establish that any benefit that wife
receives from the business fulfills the transitional purposes of
the MSA's spousal support obligation.

In a related sense, we reject husband's argument,
which the trial court adopted, that wife's "free" room and
board, living and eating at the restaurant/inn, partially,
materially fulfilled the purposes of the support obligation.
That argument fails for two related reasons. First, husband's
argument depends on a false premise: Here, as in much of
life, "there is no such thing as a free lunch." Wife was not
receiving "free" board and room; rather, her ability to live in
the banquet room was, at least in part, a consequence of her
investment of approximately $100,000 in the restaurant and
of her unpaid labor to maintain the business as a going con-
cern, and her consumption of meals at the restaurant added

to the variable overhead. Second, husband had the burden of proof with respect to justifying modification and he adduced no evidence as to wife's true current living expenses. For example, husband did not present any evidence of exactly how much money, if any, wife saved by living in the inn's banquet room. In sum, husband could have, but did not, present evidence with which to compare wife's current living expenses with those from before she moved into the inn. Without such evidence, we cannot conclude that moving into the inn eliminated wife's need for support. *Cf. Bock and Bock*, 171 Or App 458, 463, 15 P3d 609 (2000) (spousal support was awarded to reduce a "disparity in the parties' incomes" and the party seeking modification failed to produce evidence of the parties' prior incomes).

■     We consider, finally, whether the decline in husband's income justified modification of the spousal support obligation. As noted, husband's annual gross income declined by over $100,000—from approximately $350,000 to approximately $230,000—between 2000 and 2002. To be sure, such a reduction is, in absolute terms, significant. However, husband's income still exceeded $200,000 and his support obligation for the remaining two and one-half years under the MSA was less than $38,000 a year. Most significantly, husband admitted that, even with the support obligation, the decline in his income has not affected his standard of living in any way. Accordingly, the decline in husband's earnings did not constitute a "substantial change" in circumstances justifying modification.

The trial court erred in modifying husband's spousal support obligation. Given that determination, we also reverse the award of attorney fees to husband.

Order and supplemental judgment reversed; judgment awarding attorney fees reversed.