Argued and submitted September 18, 2009, reversed and remanded for modification of spousal support and property division and for reconsideration of child support; otherwise affirmed March 3, 2010

In the Matter of the Marriage of

Brian Sean GILLIS,
*Petitioner-Respondent,*

*and*

Susan Cusack GILLIS,
*Respondent-Appellant.*

Lane County Circuit Court
15-06-04548; A134117 (Control), A136539

227 P3d 809

George W. Kelly argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

In this dissolution case, wife appeals a judgment of dissolution and supplemental judgments, all related to the property distribution, custody, child support, and an award of attorney fees. She assigns error to, among other rulings, the awards of child and spousal support, the property division, and the denial of her requests for attorney fees. On *de novo* review, ORS 19.415(3) (2007),[1] we modify spousal support and the property division, and remand the judgment for recalculation of child support. We otherwise affirm.

The parties were married in 1990 and remained married for 16 years. They have a daughter, born in 1992, who is currently in wife's custody. At the time of trial, wife was 52 years old and husband was 41, and both were in good physical health.

Husband has a bachelor's degree in computer science and owns a software business that he started before the marriage. He has been the primary wage earner in the family. A dispute exists as to husband's income. He claims that his annual income is approximately $180,000. Wife asserts that, when averaged over the five previous years, husband's annual income is $234,618. The difference is due, in substantial part, to the fact that, over a five-year period, husband made annual voluntary pre-tax contributions of approximately $40,000 to a qualified retirement plan. Husband contends that those contributions should not be counted as part of his earnings, while wife contends that, because the contributions are entirely voluntary, they should be counted.

Wife has been the homemaker for the family, with primary responsibility for care of the parties' daughter, who was age 14 at the time of trial. Wife is licensed in Oregon as a real estate broker. She has a college degree in business and has also completed some post-graduate work. She has some experience working in financing and accounting. During the marriage, she worked part time in husband's business and

---

[1] ORS 19.415 was amended by Senate Bill (SB) 262 (2009). Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415.

occasionally helped the parties and friends with real estate transactions; however, her annual income over the last five years did not exceed $11,000. After the divorce, wife plans to live in Washington and work as a realtor.

The primary assets of the marriage are the family home, two rental houses, husband's business, and several retirement accounts, including a Fidelity retirement account valued at $38,000 after taxes.

The trial court found that husband's income is $186,000 and rejected wife's contention that the figure is substantially higher. The court also found that wife is capable of earning $20,000. The court awarded to husband the marital residence and husband's software business. The court awarded to wife the parties' two rental houses and two of the retirement accounts and explained that "[wife] is getting all of the retirement interest as far as I know." The court, however, made no specific provision for the disposition of the Fidelity retirement account, and it went to husband as part of an award of the remaining personal property to him. The court awarded to wife a separate investment account, as well as the parties' automobile. To offset a difference in the awards, the court awarded wife an equalizing judgment of $40,000, to be paid in $500 installments over 24 months. The court awarded wife transitional spousal support of $3,000 per month for five years. Because husband was awarded custody of the parties' daughter, wife was also ordered to pay child support.

Two months after entry of judgment, husband filed a motion and order to show cause why wife should not be held in contempt for disposing of personal property that had been awarded to him. *See* ORS 107.093(2)(c) (prohibiting party from disposing of property pending dissolution without written consent of other party or an order of the court). After hearing, the trial court did not find wife in contempt. It determined, however, that, in disposing of husband's property having a value of $10,000, wife had "unilaterally changed the property distribution in a way that requires the Court's further attention." To remedy wife's conduct, the trial court awarded husband $10,000 by supplemental judgment, and also awarded husband his attorney fees.

As noted, the trial court originally awarded custody of the parties' minor daughter to husband and required wife to pay child support. Some seven months after trial, however, husband and the daughter had a physical altercation, and the daughter ran away. Wife filed an emergency motion for a temporary change in custody. In a supplemental judgment, the trial court determined that the circumstances justified a permanent change of custody to wife. The court ordered that husband pay child support.

Our summary of the facts hints at the unfortunate reality that this dissolution has involved more than the usual level of acrimony. The trial court did not think highly of the parties' conduct. In particular, the court found wife to be deceptive, evasive, and not credible. The court admonished her for failing to produce documents requested by husband or to provide values for personal property, and told wife that her refusal to provide those values would work against her. In its written judgment of dissolution, the court found wife to be in contempt for failing to provide records in a timely manner and "in undertaking obfuscation as to keep them hidden to the last minute," and awarded husband a sanction of $1,000.

Wife appeals the dissolution judgment, as well as the supplemental judgments awarding husband attorney fees and awarding her child support. She assigns error to the trial court's award of spousal support, the calculation of child support, the award of the retirement accounts, the division of personal property, the calculation of the equalizing judgment, and the court's award of attorney fees.

■     We begin with wife's contention concerning spousal support. Wife argues that, given the parties' disproportionate earning capacities, the trial court's award of $3,000 per month in transitional support for five years is inadequate. In her view, a more appropriate spousal support award would be two years of transitional support in the amount of $7,000, followed by indefinite maintenance support of $5,000 per month.

The linchpin of wife's argument is her assertion that there is substantial disparity in earning capacities, which, in turn, depends on her assertion that the trial court under-estimated husband's income. As we have noted, husband

asserts—and the trial court agreed—that his income was approximately $186,000 (on appeal, husband actually asserts that the evidence would support an even lower figure). Wife contends that husband's income, based on a five-year average of his business income as shown on his federal tax returns, is $234,618. The difference, as we have noted, rests primarily on the treatment of husband's contributions of $40,000 to a retirement savings plan. Husband replies that the evidence shows that the contributions were not, in fact, voluntary.

■ We conclude that the contributions that husband voluntarily made to a qualified retirement plan are properly treated as a part of his income. Instructive in that regard is this court's decision in *Halpert and Leonard*, 157 Or App 276, 970 P2d 253 (1998). In that case, the husband voluntarily contributed a portion of his income to his 401(k) retirement. The issue was whether those contributions must be taken into account as the husband's income for purposes of calculating child support. We concluded that, although a voluntary contribution to a retirement does, in a practical sense, reduce "available present income," it nevertheless "does not take that income out of the calculation of gross income in awarding child support." *Id.* at 279.

The decision in that case turned on the broad reference to "gross income" that, under the Child Support Guidelines, is the basis for setting child support amounts. *Id.* This case is slightly different. ORS 107.105(1)(d), which sets out the relevant factors for determining the type, amount, and duration of support, refers to "[t]he financial needs and resources of each party," and to "[t]he relative earning capacity of the parties" in awarding transitional, compensatory, and maintenance spousal support. If anything, those terms are even broader and more all-encompassing than the term that was dispositive in *Halpert*. Thus, the same reasoning would seem applicable to this case.

Husband does not argue to the contrary. Instead, he contends that the contributions at issue were not voluntary and that, instead, he was actually required to make those contributions. Husband points to testimony by wife that she set up a retirement plan for the business that required husband to make contributions to a retirement plan for his

employees; however, he cites no portion of the record that establishes that the particular contributions at issue were not voluntarily made. We therefore conclude that those funds are available to husband to spend as he desires and are therefore properly treated as a resource for both spousal and child support. When husband's voluntary contributions to his retirement plan are treated as a part of his income, his average annual income is approximately $205,000.

With that figure in mind, we turn to the amount and duration of support. As we have just noted, the provisions of ORS 107.105(1)(d) guide the court's determination in deciding whether to award spousal support, what type of support to award, how much to award, and the duration. The overarching principle is that the amount awarded as spousal support is to be "just and equitable." ORS 107.105(1)(d).

In this case, the trial court awarded wife $3,000 in transitional support for five years. Wife contends that both the amount and duration of support are inadequate. Husband does not cross-appeal, but still contends that no transitional support is necessary. According to husband, if wife will only begin working full time in Oregon in her chosen field of real estate or in accounting, she could become self-supporting immediately.

The trial court found, however, and we agree, that wife's earning capacity is no more than $20,000 per year, or $1,666 per month, and that it will take some time for her to build up to an income level that will allow her to be self-supporting. Wife did not work full time outside the home during the marriage while caring for the parties' child and managing the household, and she needs time to adjust to a reentry of the job market. In light of the length of the marriage, the length of time that wife has been out of the job market, the time that she will need to improve her earning potential, and the disparity in the parties' earning capacities, we agree with the trial court that an award of transitional support is appropriate. Wife testified that, if she moves to Washington, she will require a period of training to attain her realtor's license in that state. Husband argues that wife's choice to embark on a career in a different state should not obligate him to pay transitional support, when she is

perfectly capable of being fully employed in Oregon. We find, however, that, whether wife stays in Oregon or moves to Washington, three years of transitional support is necessary to allow wife to make the transition to full-time employment. ORS 107.105(1)(d)(A).

Even with a period of transition, however, wife's full earning potential is uncertain and will never be as high as husband's. *See Pokorny and Pokorny*, 109 Or App 503, 506, 820 P2d 827 (1991). Wife spent the years of the marriage primarily in the home and has not developed her earning capacity; in light of her age, she has a relatively short period of time in which to do so. Given the duration of the marriage, the ages of the parties, their relative needs and earning capacities, and their work experience and skills, we find that maintenance support is necessary. *See* ORS 107.105(1)(d)(C); *McLauchlan and McLauchlan*, 227 Or App 476, 488-91, 206 P3d 622, *rev den*, 346 Or 363 (2009); *Cullen and Cullen*, 223 Or App 183, 194, 194 P3d 866 (2008); *Potts and Potts*, 217 Or App 581, 590, 176 P3d 1282 (2008). Maintenance support should continue until wife reaches the age of 60, at which time she can begin to draw on her retirement accounts without penalty.

As to the amount of spousal support, wife asserts that an appropriate award is $7,000 in transitional support for two years, followed by $5,000 in maintenance support, indefinitely. Husband asserts that that is too much and stresses that, despite his high earnings, the parties did not live extravagantly; rather, they lived modestly and saved for retirement. As for the parties' modest lifestyle during the marriage, that is but one of the factors that bears on the award of maintenance support. ORS 107.105(1)(d)(C)(iv). We also look at the circumstances existing at the time of dissolution, *McLauchlan*, 227 Or App at 488-91, including the discrepancy in income and earning capacity. ORS 107.105(1)(d)(C)(v).

Husband further contends that wife, having been awarded the retirement accounts in the property division, is the beneficiary of the family's frugal lifestyle during the marriage, and that those assets, along with the other property awarded to wife, will provide her with an income sufficient to

have a lifestyle comparable to that shared by the parties during the marriage. Husband points out that the assets awarded to him, in contrast, are not liquid and consist of the family home and his business, which is the source of his income.

It is true, as husband contends, that, in assessing the need for spousal support, all the financial provisions of the judgment must be considered. *See Smith and Smith*, 168 Or App 349, 7 P3d 559 (2000) (In assessing the need for spousal support, all financial provisions of the judgment must be considered.). The retirement accounts, however, were awarded to wife as a portion of her share of the marital assets, and they reflect her presumably equal contribution to the acquisition of assets during the marriage. Although wife is free to use those assets to supplement her income, the relative difference in the parties' earning capacities nonetheless bears on the amount of support awarded. ORS 107.105(1)(d)(C)(v) (In setting spousal maintenance, court should consider "[t]he relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property."). In light of the disparity in the parties' earning capacities, we conclude that the fact that wife has been awarded assets from which she might draw income does not preclude an award of maintenance support.

We agree with husband that the goal of maintenance spousal support is not to equalize the parties' incomes or to create a permanent dependency, but to enable the parties to achieve economic self-sufficiency in a manner that is just and equitable. *See McLauchlan*, 227 Or App at 489. For that reason, we reject wife's recommendation of indefinite maintenance support. However, even if, as husband suggests, wife decides to draw on her assets as a source of income, we find it unlikely that she will be able to attain self-sufficiency after only five years in a manner approaching the standard of living that the parties shared during the marriage. Given wife's age, and based on our assessment of the parties' lifestyle during the marriage, the time it will take wife to reintegrate into the job market, wife's potential future earnings and expenses, and the disparity in the parties' incomes, we find it

just and equitable to award wife $5,000 per month for a period of three years ($2,000 in transitional and $3,000 in maintenance support), followed by five years of maintenance support of $4,000 per month, for a total of eight years of spousal support from the date of judgment, at which time wife will be able to draw on her retirement accounts without penalty.

■ In her second assignment of error, wife contends that the trial court erred in its calculation of child support. In view of our resolution of the first assignment of error, we agree that the child support award must be reconsidered, and we therefore remand the case for that purpose.

■ In her third assignment of error, wife contends that the trial court erred in failing to divide between the parties a Fidelity retirement account with a value after taxes of $38,000 at the time of trial. As we have noted, the trial court did not expressly itemize the Fidelity account and, because it is in husband's name, it was awarded to him by virtue of a provision awarding to husband the personal property currently in his possession. Wife contends that, in light of comments made by the trial court from the bench, it intended to award the account to wife and the failure to do so was inadvertent. Husband notes that the judgment also fails to make mention of a retirement account in wife's name with an after tax value of approximately $4,000.

It is clear from the trial court's statements from the bench that it intended to award wife all of the retirement accounts. The court said: "[Wife is] getting all of the retirement interest as far as I know." As we understand the trial court's statement, the court unambiguously intended to award wife all of the parties' existing retirement accounts, and the failure to include the Fidelity account was an oversight, and husband does not contend otherwise. Wife seeks an award of half of that account, which, according to our calculations, would approximately equalize the property division. We therefore conclude that the judgment should be modified to award wife half of the Fidelity account by way of a qualified domestic relations order (QDRO).

In her fourth assignment, wife contends that the trial court made a mathematical error in the calculation of

the equalizing judgment. Husband argues that the contention was not preserved. We agree that the assignment was not preserved and further reject the contention that any error was apparent on the face of the record.

■    Wife's fifth assignment pertains to the supplemental judgment that the trial court entered in response to husband's contempt motion. As we have noted, after entry of the dissolution judgment, husband sought to hold wife in contempt for having unilaterally disposed of personal property that had been awarded to him. The court did not find wife in contempt, but found that she had withheld from husband property having a value of $10,000, and had thereby changed "the property distribution in a way that requires the Court's further intervention." The court remedied wife's action by entering a supplemental judgment for husband in the amount of $10,000. Wife now contends that the trial court erred, because it had no authority to modify the property division after entry of judgment. *See, e.g., Thomas and Thomas*, 160 Or App 365, 369, 981 P2d 382 (1999) (property division cannot be modified post-judgment). Husband asserts that the trial court's supplement judgment was not a modification of the property division, but fell within the court's continuing authority to oversee the distribution of the assets.

We agree with husband that the trial court's action was within the court's continued authority under the dissolution judgment to "assist in the distribution" of the parties' property, and was also within its general equitable powers under ORS 107.405. *Fitzgerald and Fitzgerald*, 70 Or App 625, 628, 690 P2d 1114 (1984). We conclude further that the trial court had authority to award attorney fees with respect to its enforcement of the judgment.

We reject without discussion wife's remaining assignments of error.

Reversed and remanded for modification of spousal support and property division and for reconsideration of child support; otherwise affirmed.