Argued and submitted November 18, 2009, supplemental judgment terminating spousal support and life insurance modified to require payment of $1,400 in monthly support and the purchase of life insurance for wife's benefit July 28, 2010

## In the Matter of the Marriage of

### Michael E. REAVES,
*Petitioner-Respondent,*

*and*

### Janet L. REAVES,
*Respondent-Appellant.*

Lane County Circuit Court
159809983; A139446

236 P3d 803

George W. Kelly argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

.

**LANDAU, P. J.**

In this domestic relations case, wife appeals a supplemental judgment terminating husband's spousal support obligation following his retirement. She argues that, although husband's retirement may warrant a reduction in support, it does not warrant termination of support entirely. Husband contends that termination of his support obligation is appropriate given that his retirement has reduced his ability to pay support. On *de novo* review, *Crook and Crook*, 199 Or App 260, 262, 110 P3d 648 (2005),[1] we agree with wife that the trial court erred in terminating spousal support and modify the judgment accordingly.

The parties were married for 30 years. They divorced in 1999. At the time of the dissolution, husband, then 52, worked as a psychiatrist for Lane County, earning $9,162 per month. Wife, then 53, was not employed outside the home. There are no children of the marriage.

The parties entered into a marital settlement agreement (MSA) under which husband agreed to pay monthly spousal support of $3,500 for two years, and then $3,200 indefinitely. The MSA stated that the spousal support award was "a contribution toward the support of [wife]," but did not otherwise recite a purpose for the award. Although wife was then unemployed, it was anticipated that she could earn $2,000 per month within two years. The agreement required husband to maintain $500,000 in life insurance naming wife as the beneficiary for as long as he had an obligation to pay spousal support.

In the years following the dissolution, husband continued to work for Lane County, although, in 2007, he worked 80 percent of full time. He earned approximately $13,800 per month in 2006 and $12,205 per month in 2007. Husband remarried. His current wife works as a licensed clinical social worker and psychotherapist, and earned about $3,650 per month in 2007.

---

[1] This case was filed before the effective date of the 2009 amendments to ORS 19.415(3)(b) that made *de novo* review discretionary with the Court of Appeals. Or Laws 2009, ch 231, § 2.

Wife, meanwhile, began work teaching art half time at the University of Oregon. In 2006, she earned wages of $26,834, or $2,236 per month. Her work is contractual on an annual basis. Wife testified that she would work full time if offered the opportunity, but that opportunity has not arisen. Wife is also an artist. She does not earn any income from that work; however, maintaining a studio and showing her work are important adjuncts to her teaching.

In 2007, husband decided to retire, effective in June 2008. In light of that planned retirement, he moved to modify the dissolution judgment to terminate his spousal support obligation.

At trial, the evidence showed that husband's full PERS benefit is $2,751.96 per month, but that he has elected a survivorship benefit for his current wife, which reduces his monthly benefit to $2,234. Husband also receives $330 as an alternate payee on wife's PERS account. Husband's full federal civil service retirement benefit is $683 per month, but once again he opted for the survivorship benefit for his current wife, and so his monthly benefit was $540. Husband receives Social Security of $1,447 per month. Husband has additional retirement investments of $350,607, from which his financial adviser estimates that he could derive monthly income of about $1,169. Considering all of these resources, husband estimates that his post-retirement income will be $5,719 per month, representing a significant reduction of his income.

Husband's uniform support affidavit shows expenses of $3,161 per month, not including spousal support, but including household expenses for his current wife. Husband notes that, upon his retirement, his monthly expenses will increase by $971 for health insurance, for a total in monthly household expenses of approximately $4,100. Thus, husband concluded, in light of those monthly expenses, his post-retirement income of $5,719 will no longer be adequate to sustain the spousal support obligation.

Wife opposed husband's motion to modify. In wife's view, husband underestimated his own post-retirement income and failed to take into account her continuing need for spousal support.

Concerning husband's post-retirement income, wife contended that, for purposes of determining husband's ability to pay spousal support, his income should include the *total* benefit available from his federal and PERS retirement accounts, rather than as reduced by the survivor benefit election. When those adjustments are applied, wife asserted, husband's monthly income is $6,380.

As for wife's own needs, the evidence at trial showed that, upon husband's retirement, she will receive benefits of $683 from husband's federal civil service retirement plan. She is also an alternate payee on husband's State of Oregon PERS retirement plan and could begin receiving $647 per month from that account, if she so elected. Wife also has her own PERS account, from which she could begin drawing $452 per month, as long as she continues to work no more than half time. Wife is also eligible to begin receiving Social Security. If she were to continue to work half time, she could draw benefits of $240 per month; if she were to retire completely, her monthly benefit would be $722. If, as wife would like, she is able to wait until her full retirement age of 66 to begin drawing Social Security benefits, her monthly benefit amount will be $909.

Wife's uniform support affidavit lists monthly expenses of $4,614. She testified that a complete termination of spousal support would be difficult for her, but she agreed that spousal support should be reduced by the $683 that she will receive from husband's federal civil service retirement account.

Husband argued that wife underestimated her own resources. In particular, he asserted that wife could increase her income by retiring now, as opposed to waiting until she is 66. Husband offered the testimony of Pope, a financial adviser, who opined that, in light of wife's limited cash flow, he would advise her to begin drawing on her PERS and Social Security benefits immediately, and perhaps put her Social Security payments in a savings account in case of an emergency. In his view, the fact that wife's monthly payments from those accounts will be smaller if she begins drawing on them now, rather than waiting until age 66, will be offset by

the longer duration of payments over the course of wife's lifetime. Wife also has an IRA, from which Pope believes wife could comfortably begin withdrawing $400 per month for the rest of her life. In addition, wife owns a home and 26 acres. Pope testified that if wife were to sell the property and downsize to a smaller residence, she could invest the remaining proceeds, from which she could draw a net monthly income of $600. With that additional amount, wife's monthly income would be $5,305.

Wife responded that, when she retires, she will be entirely dependent on retirement income and spousal support. To maximize her monthly retirement benefits, she contended, it would be best to wait as long as possible to begin collecting them and not draw on her benefits until she retires at age 66. In support, wife offered the testimony of her own expert witness, Bonebrake, who recommended that wife wait until age 66 to begin drawing on her benefits. According to Bonebrake, "it's particularly important for women to maybe wait longer because women live longer than men to the tune of about eight years typically." Bonebrake explained that the "break-even point" for Social Security benefit calculation purposes is around 84 years of age, and wife's life expectancy—based on her age of 62 at the time of trial—is 91 years of age. Additionally, wife does not want to sell her property, which includes her studio. She notes that the property, which has a market value of $500,000, is encumbered by a debt of $200,000, and she is skeptical that the property would sell for its current market value.

The trial court found that there had been a substantial and unanticipated change in circumstances since the dissolution and that it was just and equitable to terminate husband's obligations to provide spousal support, life insurance, and disability insurance. In reaching that conclusion, the trial court apparently did not take into account husband's current wife's income as a resource available to him. The court also apparently did not include as part of husband's income the voluntary contributions that he makes to secure survivor benefits for his current wife.

On appeal, the parties essentially reprise the arguments that they advanced in the trial court. Husband

contends that his reduced income justifies termination of support and that wife can offset the loss of support income by retiring early and selling assets to generate additional cash. Wife responds that husband underestimates his own post-retirement income and that she should not be forced to retire early and sell her own assets just to allow husband to retire when he wishes.

ORS 107.135 authorizes a court to modify an award of spousal support if the economic circumstances of a party have substantially changed. *See Gibson and Gibson*, 217 Or App 12, 18, 174 P3d 1066 (2007). In this case, the trial court found such a change in the parties' economic circumstances, and wife does not challenge that finding.

■■ If a substantial change in economic circumstances has occurred, the question becomes whether the particular modification that is sought is appropriate. Husband, as the party seeking the modification, has the burden to show that a modification of the support required by the MSA is warranted. *Miller and Miller*, 207 Or App 198, 205, 140 P3d 1172, *adh'd to as modified on recons*, 208 Or App 483, 144 P3d 1061 (2006) (burden of establishing change of circumstances justifying modification is on party requesting change); *Rubey and Rubey*, 165 Or App 616, 622, 996 P2d 1006 (2000).

■ In this case, husband seeks termination of support. A termination of spousal support is proper when the purpose of the initial award has been met. *Bates and Bates*, 303 Or 40, 46, 733 P2d 1363 (1987). When the award does not provide any guidance as to its purpose, the court's "task is to maintain the relative positions of the parties as established in the initial decree[.]" *Id.* at 47. The ultimate inquiry, however, is whether a modification of support is "just and equitable" under the totality of the circumstances. ORS 107.105(1)(d); *Albrich and Albrich*, 162 Or App 30, 37, 987 P2d 542 (1999).

Determining whether the termination of support is consistent with maintaining the relative positions of the parties in the MSA necessarily depends on a determination of what those relative positions are; in other words, we must determine the nature and amount of the resources that are

now available to each of the parties. That, in fact, is the focus of the parties' contentions on appeal.

We begin with husband's resources. As we have noted, husband contends that he has available to him a total of $5,719 per month in retirement and other income. Wife contends that the amount is too low, given that it fails to take into account husband's current wife's income.

On that question, our decision in *Harp and Harp*, 214 Or App 520, 524-25, 167 P3d 457 (2007), is instructive. In that case, we concluded that, where a spouse has remarried and has combined expenses and assets with a new spouse, it is appropriate to consider the additional income from the new spouse in determining an appropriate spousal support amount. In this case, the evidence shows that husband and his current wife have combined expenses; among other things, husband's uniform support affidavit lists expenses for both husband and his current wife. The ready inference is that they are combining their incomes. Husband has identified no evidence to the contrary. With his current spouse's monthly income of approximately $3,650, husband's available monthly income is approximately $9,369.

■ Wife also argues that it is appropriate to include the full retirement benefits that husband receives, not reduced by approximately $650 in voluntary contributions for the purchase of a survivor benefit for his current wife. Husband argues that "there is no legal or equitable basis for [wife] to argue that husband should be restricted as to what elections he chooses to make" with respect to income that is produced from his share of his retirement.

Our recent opinion in *Gillis and Gillis*, 234 Or App 50, 227 P3d 809 (2010), aids our decision as to that issue. In *Gillis*, the husband made voluntary contributions to a qualified retirement plan. The question was whether, in calculating the husband's income for the purpose of determining spousal support, it was appropriate to treat those voluntary contributions as part of his income. *Id.* at 54-55. We concluded that, given the voluntary nature of the expenditure, "those funds are available to husband to spend as he desires and are therefore properly treated as a resource" for support purposes. *Id.* at 56; *cf. Halpert and Leonard*, 157 Or App 276, 279, 970 P2d 253 (1998) (voluntary contributions to 401(k)

account properly treated as income for purpose of calculating child support). In this case, as in *Gillis*, husband's retirement income is available to him to spend as he wishes. The fact that he chooses to spend part of it to secure a benefit for his current wife does not make it any less a resource that is available to him and, as a result, it may properly be considered as part of his income for support purposes. Taking those voluntary contributions into account produces a total of approximately $10,000 in monthly income.

Husband contends that, in any event, any comparison of the parties' incomes must take into account the number of people in the household. That means, he contends, that we should divide his $10,000 in monthly income by the number of people currently in his household—that is, two—producing a total income of $5,000 per month for support purposes.

■■  We find no support in the relevant statutes or the case law for husband's proposal. Of course, it is appropriate to take into account, among other relevant considerations, the number of members of a household and the expenses that they incur. *See, e.g., Bates and Bates*, 303 Or 40, 47, 733 P2d 1363 (1987) (noting that the wife's household income had grown since the dissolution but that the number of members of household had remained unchanged). It is another thing entirely to suggest that a spouse's income, for support purposes, is simply divided by the number of household members. As we noted in *Hoag and Hoag*, 152 Or App 288, 293, 954 P2d 184 (1998), the determination of an appropriate level of support "is not a matter of applying a mathematical formula."

■  Husband also argues that wife has underestimated her own resources. Specifically, husband contends that wife's income should include PERS and Social Security retirement benefits that she could elect to receive now, as well as income that could be produced by selling the real estate—her current residence and timber property—that she now owns.

We begin with husband's contention that we should attribute to wife income that she could obtain now, were she to elect to collect retirement benefits earlier than she otherwise would choose. According to husband, wife should be required to include those benefits unless she can show that

she would be economically prejudiced by failing to wait to draw those benefits. In husband's view, his expert's opinion on that question established that she would be "better off" collecting the benefits now. Husband cites as authority for that contention our opinion in *Wilson and Wilson*, 186 Or App 515, 63 P3d 1244 (2003). Wife, on the other hand, relies on *Arnold and Arnold*, 147 Or App 572, 575, 938 P2d 771 (1997), which, she contends, stands for the proposition that the courts will not require a spouse in effect to retire early.

Neither party is correct. First, as for husband's reliance on *Wilson*, the circumstances in that case were quite different from those in this case. In *Wilson*, the dissolution judgment awarded the wife spousal support. In addition, each party was awarded a half-interest in the husband's retirement benefits. Some years later, the husband elected to retire earlier than the wife had expected. As a consequence of the husband's retirement, the wife began receiving her share of benefits. The husband moved for modification terminating his spousal support obligation. The wife objected that, among other things, she was being penalized by the husband's early retirement. We rejected the argument, noting that there was no evidence that the husband's decision to take early retirement had economically prejudiced the wife. 186 Or App at 527. Thus, the question was the effect of a spouse's decision to retire early. In this case, by contrast, the question is whether a spouse is free to decide *not* to take retirement benefits earlier than she had planned. *Wilson* says nothing about that.

*Arnold* is also factually distinguishable. In that case, the husband moved to modify a dissolution judgment to terminate his spousal support obligation. He argued that he wished to retire at 50, but he could not do so because paying spousal support prevented him from reducing his debts sufficiently to retire. 147 Or App at 574. He asked the wife to take her share of his PERS retirements early; she refused to do so. The husband's theory was that the wife should be required to take the early retirement benefits, which would have the effect of creating changed circumstances sufficient to permit the termination of spousal support. We rejected the argument:

"Here husband retains the ability to pay spousal support, at least until he actually retires. Wife, not surprisingly, prefers to wait as long as possible—either until husband retires or until she turns 64—before beginning to draw on her PERS rights. That delay would allow her to maximize her retirement income. * * * [H]usband wants wife to agree to a modification of the property distribution [in the dissolution judgment] so that he can use the money that presently goes to her spousal support to pay off his debts, purportedly in anticipation of retirement, at the cost of reducing wife's permanent retirement income. In the absence of a change of circumstances, we will not require wife to subsidize husband in that fashion."

*Id.* at 575-76. Thus, the case does not stand for a broad proposition that currently available retirement benefits cannot be considered in determining an appropriate amount of spousal support.

The proper treatment of retirement benefits is set out in ORS 107.135(4)(a)(B), which provides that, in reconsidering spousal support, we are required to "consider income opportunities and benefits of the respective parties from all sources, including but not limited to * * * [r]etirement benefits available to the obligor and to the obligee." In *Albrich,* 162 Or App at 35, we explained that the statute is broad and inclusive in setting out what must be "considered" in evaluating spousal support. Specifically, we held that, under that statute, courts are required to take into account income opportunities, including retirement benefits, that are available from property awarded in the dissolution judgment. *Id.* at 36. We hastened to add, however, that "although [the statute] mandates an expansive consideration, it does not compel a particular result." *Id.* That is, it does not require the court to treat the availability of retirement benefits as current income. *Id.* at 37. "The overriding consideration in determining the appropriate amount of spousal support," we held, "is what is 'just and equitable,' ORS 107.105(1)(d), under the totality of the circumstances." *Id.*

Our application of the statute in *Albrich* serves to emphasize the point that taking potential retirement benefits into consideration does not necessarily mean that those benefits are counted as income. In that case, the dissolution

judgment required the husband to pay $5,000 per month spousal support. He was forced to retire early because of a medical condition, which substantially reduced his income. Based on the reduction in income, he moved for a reduction in spousal support. The trial court agreed and reduced the support obligation to $2,000 per month. *Id.* at 32-33. The wife appealed, arguing that, among other things, the trial court erred in failing to take into account the availability of retirement benefits as "potential income opportunities" in determining that there had been a substantial change in circumstances sufficient to warrant the reduction in support. *Id.* at 33. We concluded that, although ORS 107.135(4)(a)(B) required those retirement benefits to be "considered," it did not necessarily follow that those benefits should be treated as current income with which the husband could continue to pay a higher level of spousal support. We found that, under the facts of that case—particularly the fact that the husband's early retirement was not voluntary but, instead, was compelled by a medical condition—it was not just and equitable to treat the husband's potential retirement benefits as current income from which he could continue to pay the wife's support. We therefore affirmed the trial court's reduction of the amount of support. *Id.* at 37.

In this case, as in *Albrich*, ORS 107.135(4)(a)(B) requires that we at least consider the availability of potential retirement benefits from wife's PERS account. But, also as in *Albrich*, we find that it would not be just and equitable to treat those potential benefits as current income to wife, in effect, requiring her to take early retirement and suffer a reduction in benefits from the amount that would be available to her were she able to retire later, as she currently plans to do. Husband's contention that, as an actuarial matter, wife would actually be better off taking the smaller amount of benefits now, as opposed to a larger amount of benefits later, is not persuasive. Among other things, wife's expert explained, it is generally better for women to wait to take retirement benefits because they have a relatively longer life expectancy.

That leaves husband's argument that, in any event, we should attribute to wife income that she could earn by the sale of her residence and timber property. In our view, however, husband's assumption that wife's property could be sold

as a source of income is too speculative. Husband offered the testimony of Pope, a financial advisor, who believed that wife should sell her property and reinvest the surplus, but he did not present evidence that the property, if sold, would actually yield proceeds sufficient to allow wife to have funds to invest after purchasing a new residence.

To summarize, then, husband's current monthly income is approximately $10,000. Wife's, without spousal support, is approximately $3,300 per month. Both in absolute and in relative terms, wife's income is significantly less than what was contemplated by the original MSA.

As we noted earlier, we are not unmindful that, although husband's income now is approximately $10,000, he also has additional expenses associated with a household of two persons. But, as we also have noted earlier, husband reports that his and his current wife's combined expenses total $4,100, leaving a net of almost $6,000. Wife, on the other hand, reports expenses of $4,614, the reasonableness of which husband does not challenge. Clearly, without spousal support, she cannot continue to make ends meet, while husband enjoys ample income to continue to contribute to wife's needs.

Considering all of the circumstances of the parties, we conclude that it is just and equitable for husband to continue to pay support at the reduced amount of $1,400 per month. That amount is affordable for husband and will allow wife to meet her expenses while preserving savings that she will need when she is no longer working. *Weber and Weber*, 337 Or 55, 65-66, 91 P3d 706 (2004) (reasoning that, although initial support levels are based on the standard of living the parties enjoyed before the divorce, modifications are "based more properly on considerations of the payee spouse's increased needs and the payor spouse's concomitant ability to meet them"). In light of our reinstatement of spousal support, we also modify the supplemental judgment so as to reinstate husband's obligation to maintain life insurance with wife as the beneficiary.

Supplemental judgment terminating spousal support and life insurance modified to require payment of $1,400 in monthly support and the purchase of life insurance for wife's benefit.